UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| MANUEL MATEO-EVANGELIO, JAIME TREJO-CARDONA, GILBERTO CERVANTES-VEGA, REYNALDO VILLALOBOS-MARTINEZ, EMILIO REYES, MARIA DE LOS ANGELES GONZALEZ-ROMAN, RAMIRO CERVANTES-VEGA, FRANCISCO CARMELO MATIAS-CASTRO, PABLO GONZALEZ-ROMAN, BENIGNO VILLAGOMEZ-GARCIA, and SERGIO NARCISO LOPEZ-JUAREZ, on behalf of themselves and all other similarly situated persons, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | THIRD AMENDED COMPLAINT |
| v. | ) ) ) | CLASS ACTION |
| TRIPLE J PRODUCE, INC., HOCUTT BROTHERS, INC., HOCUTT FARMS, INC., JUDY HOCUTT, JOEY M. HOCUTT, JAMES MICHAEL HOCUTT, and M. JAY HOCUTT, | ) ) ) ) ) ) | Civil Action No.: 7:14-cv-302-FL |
| Defendants. | ) ) | |

I.  PRELIMINARY STATEMENT

1.  This is a class action by ten current and former employees of a closely held farming enterprise consisting of three corporate entities, Triple J. Produce, Inc., Hocutt Brothers, Inc., and Hocutt Farms, Inc., and the four principals and/or day-to-to operators of those three entities for unpaid wages at the adverse effect wage rate ("AEWR") and overtime rate required by the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Acct ("NCWHA"),

and liquidated damages under 29 U.S.C. § 216(b) and N.C.Gen.Stat. § 95-25.22(a1), failure to pay all wages when due and other related violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C.Gen.Stat. § 95-25.6.

2. It is also a class action by one former person who was jointly employed by farm labor contractor Maximo Becerra, or the farm labor contractor duo of Isidoro and Eusebio Armenta, that same closely held farming enterprise or one of its three (3) constituent corporate entities, and one or more of the four principals and/or day-to-to operators of the three (3) entities that constituted that enterprise for multiple violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 *et seq*. Those multiple AWPA violations are largely based upon, *inter alia*, the defendants' failure to pay wages at the adverse effect wage rate ("AEWR") for "corresponding employment as defined in 20 C.F.R. § 655.103(b), at the minimum rate required by the FLSA, and failure to pay wages when due under the NCWHA, and other related violations of AWPA.

3. Based upon their claims and the claims of the classes and collective actions under 29 U.S.C. § 207(a) and N.C. Gen. Stat. §§ 95-25.6 and 95-25.22, the plaintiffs and

the members of the collective actions and classes that they seek to represent seek payment of back wages, an equal amount of liquidated damages, actual or statutory damages, attorney fees, and costs under 29 U.S.C. §§ 216(b) and 1854(c)(1), and N.C. Gen. Stat. §§ 95-25.22(a), (a1), and (d) against Triple J. Produce, Inc., Hocutt Farms, Inc., and Hocutt Brothers, Inc., Joey M. Hocutt, M. Jay Hocutt, James Michael Hocutt, and Judy Hocutt.

II. <u>JURISDICTION</u>

4. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1337, and 1367(a), and 29 U.S.C. §§ 216(b) and 1854(a). This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

III. <u>VENUE</u>

5. Venue over this action lies in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), and 29 U.S.C. §§ 216(b) and 1854(a). At the time this action was filed against defendants Triple J Produce, Inc. (hereinafter referred to as "Triple J"), Hocutt Farms, Inc. (hereinafter "Farms"), and Hocutt Brothers, Inc. (hereinafter "Brothers"), against defendants Joey M. Hocutt, M. Jay Hocutt, James Michael Hocutt, and Judy Hocutt (hereinafter referred to as the "individual Hocutt defendants"),

defendants Triple J, Brothers, Farms, and all of the individual defendants resided in Wilson County, North Carolina. As all times relevant to this action, Triple J, Farms, and Hocutt were and are closely held, for profit, corporations organized under the laws of the State of North Carolina and operated both as an agricultural enterprise and as a business enterprise engaged in the production, processing and packing of agricultural commodities for sale in interstate commerce. All defendants regularly engaged in substantial business activities in Wilson County, North Carolina at the time this action was commenced, and a substantial part of the events that gave rise to this action occurred in Wilson County, North Carolina and the other counties that are listed in 28 U.S.C. § 113(a).

IV.  <u>NAMED PLAINTIFFS</u>

6.  All of the named plaintiffs except Sergio Narciso Lopez-Juarez were and/or are jointly and severally employed (as the term "employ" is defined by N.C. Gen. Stat. § 95-25.2(3) and 29 U.S.C. § 203(g)) by one or more of the individual defendants, defendant Triple J, defendant Brothers, defendant Farms, the agricultural enterprise operated by Triple J, Brothers, and Farms, and/or the business enterprise operated by Triple J, Farms, and/or Brothers (hereinafter referred to collectively as "all

defendants") to perform the following activities as part of the growing, harvesting, production, processing and/or packing agricultural commodities for sale in interstate commerce for the following periods of time:

(a) From in or about January 2011 through the present date for about ten or less workweeks in each calendar year in that same time period, plaintiff Mateo was and is jointly, severally, and predominantly employed in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as a migrant agricultural worker for varying periods of time to pack and process sweet potatoes and other agricultural commodities that were and are produced solely by all defendants.

(b) Upon information and belief, during each calendar year described in the time period alleged in ¶6(a) above for ten or more workweeks in each calendar year in that same time period, plaintiff Mateo was and is also jointly, severally, and predominately employed in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as a migrant worker for varying periods of time all in excess of 40 hours of work in the same workweek to pack and process sweet potatoes and other agricultural

commodities that were and are produced by person(s) or entities other than all defendants.

(c) Upon information and belief, during the time period described in ¶17 below, for at least two workweeks that occurred in the time period described in ¶6(a) above and an additional but two different workweeks in the time period that occurred in ¶6(b) above, plaintiff Mateo was also jointly and severally employed in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as a migrant worker to pack and process sweet potatoes and other agricultural commodities as alleged in ¶¶6(a)-(b) above.

(d) From in or about January 2011 through the present date for about thirty or more weeks in each calendar year in that same time period, plaintiff Mateo also was and is jointly and severally employed in the fields of one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as a migrant agricultural worker for varying periods of time to plant, top, sucker, and harvest tobacco, and to harvest, plant, and/or weed asparagus and/or other vegetables that were and are produced by all defendants.

(e) From in or about May 15, 2014 through on or about November 8, 2014 for most if not all of those weeks alleged in ¶6(d) above, plaintiff Mateo was also jointly and severally employed by Triple J or by the enterprise of Triple J, Farms, and Hocutt as a migrant agricultural worker in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) to top, sucker, and harvest tobacco, and to harvest, plant, and/or weed asparagus and/or other vegetables grown by Triple J or by the enterprise of Triple J and one or more other named defendant.

(f) From in or about January 2011 through on or about February 23, 2015 for approximately fifty or more weeks in each calendar year in that same time period, plaintiff Jaime Trejo-Cardona ("Trejo") was jointly and severally employed in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as a migrant agricultural worker for varying periods of time all in excess of 40 hours of work in the same workweek to pack and process sweet potatoes and other agricultural commodities that were produced by one or more of the defendants or by an enterprise of two or more defendants.

(g) Upon information and belief, during each calendar year described in the time period alleged in ¶6(f) above for

about twelve or more workweeks in each calendar year in that same time period, plaintiff Trejo was also jointly, severally, and predominately employed in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more of the defendants as a migrant worker for varying periods of time all in excess of 40 hours of work in the same workweek to pack and process sweet potatoes and other agricultural commodities that were and are produced by person(s) or entities other than the named individual defendants and corporate defendants in whatever form, enterprise, or combination.

(h)  Upon information and belief, during the time period described in ¶17 below, for at least two workweeks that occurred in the time period described in ¶6(f) above and an additional but two different workweeks in the time period that occurred in ¶6(g) above, plaintiff Trejo was also jointly and severally employed in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as a migrant worker to pack and process sweet potatoes and other agricultural commodities as alleged in ¶¶6(f)-(g) above.

(i) From in or about January 2011 through on or about the present date, for about ten or less workweeks in each calendar year in that same time period, plaintiffs Pablo Gonzalez-Roman and Maria de los Angeles Gonzalez-Roman (hereinafter "the Gonzalez-Roman plaintiffs") were and are jointly, severally, and predominantly employed in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as migrant agricultural workers for varying periods of time to pack and process sweet potatoes and other agricultural commodities that were and are produced solely by all defendants.

(j) Upon information and belief, during each calendar year described in the time period alleged in ¶6(i) above for ten or more workweeks in each calendar year in that same time period, the Gonzalez-Roman plaintiffs were and are also jointly, severally, and predominately employed in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as migrant workers for varying periods of time all in excess of 40 hours of work in the same workweek to pack and process sweet potatoes, peppers, squash, zucchini, and other agricultural

commodities that were and are produced by person(s) or entities other than all defendants.

(k)   Upon information and belief, during the time period described in ¶17 below, for at least two workweeks that occurred in the time period described in ¶6(i) above and an additional but two different workweeks in the time period that occurred in ¶6(j) above, the Gonzalez-Roman plaintiffs were also jointly and severally employed in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as migrant workers to pack and process sweet potatoes and other agricultural commodities as alleged in ¶¶6(i)-(j) above.

(l)   From in or about January 2011 through the present date for about thirty or more weeks in each calendar year in that same time period, the Gonzalez-Roman plaintiffs also were and are jointly and severally employed in the fields of one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as a migrant agricultural worker for varying periods of time to plant, top, sucker, and harvest tobacco, and to harvest, weed, and/or plant asparagus, sweet

potatoes, and/or other vegetables that were and are produced by all defendants.

(m) From in or about May 15, 2014 through on or about November 8, 2014 for most if not all of those weeks alleged in ¶6(l) above, the Gonzalez-Roman plaintiffs were also jointly and severally employed by Triple J or by the enterprise of Triple J, Farms, and Hocutt as migrant agricultural workers in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) to top, sucker, and harvest tobacco, perform weeding in various fields, and to harvest, weed, and/or plant asparagus, sweet potatoes, and/or other vegetables grown by Triple J or by the enterprise of Triple J and one or more other named defendant.

(n) From in or about January 2011 through on or about the present date, for about ten or less workweeks in each calendar year in that same time period, plaintiffs Gilberto Cervantes-Vega and Ramiro Cervantes-Vega (hereinafter "the Cervantes-Vega plaintiffs") were and are jointly, severally, and predominantly employed in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as migrant agricultural workers for varying periods of time to pack and process sweet potatoes, asparagus, peppers, pumpkins, and other

agricultural commodities that were and are produced solely by all defendants.

(o) Upon information and belief, during each calendar year described in the time period alleged in ¶6(n) above for ten or more workweeks in each calendar year in that same time period, the Cervantes-Vega plaintiffs were and are also jointly, severally, and predominately employed in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as migrant workers for varying periods of time all in excess of 40 hours of work in the same workweek to pack and process sweet potatoes and other agricultural commodities that were and are produced by person(s) or entities other than all defendants.

(p) Upon information and belief, during the time period described in ¶17 below, for at least two workweeks that occurred in the time period described in ¶6(n) above and an additional but two different workweeks in the time period that occurred in ¶6(o) above, the Cervantes-Vega plaintiffs were also jointly and severally employed in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more

defendants as a migrant worker to pack and process sweet potatoes and other agricultural commodities as alleged in ¶¶6(n)-(o) above.

(q)  From in or about January 2011 through the present date for about thirty or more weeks in each calendar year in that same time period, the Cervantes-Vega plaintiffs also were and are jointly and severally employed in the fields of one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as a migrant agricultural worker for varying periods of time to plant, top, sucker, and harvest tobacco, and to harvest, weed, and/or plant asparagus, sweet potatoes, and/or other vegetables that were and are produced by all defendants.

(r)  From in or about May 15, 2014 through on or about November 8, 2014 for most if not all of those weeks alleged in ¶6(q) above, the Cervantes-Vega plaintiffs were also jointly and severally employed by Triple J or by the enterprise of Triple J, Farms, and Hocutt as a migrant agricultural worker in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) to top, sucker, and harvest tobacco, and to harvest, weed, and/or plant asparagus, sweet potatoes, and/or other vegetables

grown by Triple J or by the enterprise of Triple J and one or more other named defendant.

(s)   From in or about January 2011 through on or about the present date, for about ten or less workweeks in each calendar year in that same time period, plaintiffs Benigno Villagomez-Garcia, Francisco Carmelo Matias-Castro, Emilio Reyes, and Reynaldo Villalobos-Martinez (hereinafter "plaintiffs Villa, Matias, Reyes, and Villalobos") were and are jointly, severally, and predominantly employed in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as migrant agricultural workers for varying periods of time to pack and process sweet potatoes, asparagus, peppers, pumpkins, and other agricultural commodities that were and are produced solely by all defendants.

(t)   Upon information and belief, during each calendar year described in the time period alleged in ¶6(s) above for ten or more workweeks in each calendar year in that same time period, plaintiffs Villa, Matias, Reyes, and Villalobos were and are also jointly, severally, and predominately employed in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more

defendants as migrant workers for varying periods of time all in excess of 40 hours of work in the same workweek to pack and process sweet potatoes and other agricultural commodities that were and are produced by person(s) or entities other than all defendants.

(u) Upon information and belief, during the time period described in ¶17 below, for at least two workweeks that occurred in the time period described in ¶6(s) above and an additional but two different workweeks in the time period that occurred in ¶6(t) above, plaintiffs Villa, Matias, Reyes, and Villalobos were also jointly and severally employed in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) in the packing house operated by one or more of the individual defendants and one or more of the corporate defendants or by an enterprise operated by two or more defendants as a migrant worker to pack and process sweet potatoes and other agricultural commodities as alleged in ¶¶6(s)-(t) above.

(v) From in or about January 2011 through the present date for about thirty or more weeks in each calendar year in that same time period, plaintiffs Villa, Matias, Reyes, and Villalobos also were and are jointly and severally employed in the fields of one or more of the individual defendants and one or more of the corporate defendants or by an enterprise

operated by two or more defendants as a migrant agricultural worker for varying periods of time to plant, top, sucker, and harvest tobacco, and to harvest, weed, and/or plant asparagus, sweet potatoes, and/or other vegetables that were and are produced by all defendants.

(w)  From in or about May 15, 2014 through on or about November 8, 2014 for most if not all of those weeks alleged in ¶6(v) above, plaintiffs Villa, Matias, Reyes, and Villalobos were also jointly and severally employed by Triple J or by the enterprise of Triple J, Farms, and Hocutt as a migrant agricultural worker in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) to top, sucker, and harvest tobacco, and to harvest, weed, and/or plant asparagus, sweet potatoes, and/or other vegetables grown by Triple J or by the enterprise of Triple J and one or more other named defendant.

7.  For the 2012-2014 agricultural seasons in North Carolina, defendants utilized farm labor contractors: the Armenta group (Eusebio, Isidoro, Natalie and Bertha), Francisco Salazar, and/or Max Becerra.  For the 2012 agricultural season in North Carolina, named plaintiff Sergio Narciso Lopez-Juarez (hereinafter referred to as "Lopez") was jointly and severally employed by farm labor contractor Maximo Becerra and all defendants.  For the 2013 and 2014

agricultural seasons in North Carolina, named plaintiff
Sergio Narciso Lopez-Juarez was jointly and severally
employed by the farm labor contractor duo of Eusebio and
Isidoro Armenta and all defendants. During each of those
same North Carolina agricultural seasons, all of the
defendants and one or more of those aforesaid farm labor
contractors jointly employed Lopez to perform the following
activities as part of the growing, harvesting, production,
processing and/or packing agricultural commodities for sale
in interstate commerce for the following periods of time:

(a) As a member of a crew of migrant agricultural
workers furnished by Maximo Becerra to all defendants in 2012
from May or June 2012 to early or mid-November 2012,
plaintiff Lopez was jointly employed by Mr. Becerra and all
defendants in the fields of all defendants as a migrant
agricultural worker for varying periods of time to plant,
top, sucker, harvest, and pack tobacco, and to harvest, cut,
plant, and/or weed sweet potatoes, sweet potato plants,
peppers, and/or other vegetables that were and are produced
by all defendants. During those time periods in the late
summer and fall of 2012 that plaintiff Lopez was so employed
to harvest sweet potatoes or to cut sweet potato plants he
was paid on a piece rate basis.

(b) As a member of a crew of migrant agricultural workers furnished by the farm labor contractor duo of Eusebio and Isidoro Armenta to all defendants in 2013 and again in 2014 from in or about May or June of each of those two (2) years to early or mid-November of each of those two (2) years, plaintiff Lopez was jointly employed by Mr. Becerra and all defendants in the fields of all defendants as a migrant agricultural worker for varying periods of time to plant, top, sucker, harvest, and pack tobacco, and to harvest, cut, plant, and/or weed sweet potatoes, sweet potato plants, peppers, and/or other vegetables that were and are produced by all defendants. During those time periods in the late summer and fall of 2013 and 2014 that plaintiff Lopez was so employed to harvest sweet potatoes or to cut sweet potato plants he was paid on a piece rate basis.

(c) During the time period described in ¶7(b) above that occurred in calendar year 2014, for most of the workweeks that occurred in that time period, plaintiff Lopez was also jointly and severally employed as a migrant agricultural worker in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) in the fields and/or packing house operated by all defendants to plant, top, sucker, harvest, and pack tobacco, and to harvest, plant, cut, and/or weed sweet potatoes, sweet potato plants,

peppers, and/or other vegetables that were and are produced by all defendants. During those time periods in the late summer and fall of 2014 that plaintiff Lopez was so employed to harvest sweet potatoes or to cut sweet potato plants he was paid on a piece rate basis.

(d) During all of the time periods described in ¶¶7(a)-(c) above, plaintiff Lopez was housed in real property which was owned by one or more of the defendants and used by them to house him and other migrant agricultural workers. During the time period that the plaintiff and those other workers occupied that housing in 2012, farm labor contractor Maximo Becerra controlled that housing. During the time period that the plaintiff and those other workers occupied that housing in 2013 and 2014, the farm labor contracting duo Eusebio and Isidoro Armenta controlled that housing.

V.   DEFENDANTS

8.   At all times relevant to this complaint, defendant corporate entity Triple J Produce, Inc. (hereinafter "Triple J") is and has been a corporation that is organized under the laws of the state of North Carolina, for the purpose of, among others, producing, processing, packing, and/or marketing tobacco, peppers, sweet potatoes and other agricultural products within and without North Carolina. At all times relevant to this action, Judy Hocutt, 8541 Bailey

Road, Sims, North Carolina 27880, was and is the registered agent for service of process on Triple J Produce, Inc.

9. At all times relevant to this complaint, defendant corporate entity Hocutt Brothers, Inc. (hereinafter "Brothers") is and has been a corporation that is organized under the laws of the state of North Carolina, for the purpose of, among others, producing, processing, packing, and marketing tobacco, sweet potatoes, peppers, squash, asparagus, and other agricultural products within and without North Carolina. At all times relevant to this action, Michael J. Hocutt, 8541 Bailey Road, Sims, North Carolina 27880, was and is the registered agent for service of process on Hocutt Brothers, Inc.

10. At all times relevant to this complaint, defendant corporate entity Hocutt Farms, Inc. (hereinafter "Farms") is and has been a corporation that is organized under the laws of the state of North Carolina, for the purpose of, among others, producing, processing, packing, and marketing tobacco, sweet potatoes, peppers, squash, asparagus, and other agricultural products within and without North Carolina. At all times relevant to this action, James Michael Hocutt, 8541 Bailey Road, Sims, North Carolina 27880, was and is the registered agent for service of process on Hocutt Farms, Inc.

11.  At all times relevant to this action, Hocutt and Triple J and each of the individual defendants engaged in and continue to engage in related activities in the production, processing, packing, and marketing of various agricultural commodities, and performed (either through an unified operations at 8541 Bailey Road in Sims, North Carolina, or by common control of Hocutt, Farms, and Triple J exercised by James Michael Hocutt and his wife, Judy Hocutt, the sons of James Michael and Judy Hocutt, M. Jay Hocutt and Joey M. Hocutt) for the common business purpose of producing, processing, and/or selling tobacco, sweet potatoes and other agricultural commodities.

12.  At all times relevant to this complaint, defendant James Michael Hocutt has been and continues to be a principal, part-owner, and co-operator of Hocutt, Farms, and Triple J.  During that same time period, upon information and belief, defendant James Michael Hocutt has been and continues to be an officer of Hocutt, Farms, and Triple J.

13.  At all times relevant to this complaint, defendant Judy Hocutt, the wife of James Michael Hocutt, has been and continues to be a principal, part-owner, and co-operator of Hocutt, Farms, and Triple J.  During that same time period, Judy Hocutt is and has been the President of Triple J.

14. At all times relevant to this complaint, defendant M. Jay Hocutt, a son of James Michael and Judy Hocutt, has been and continues to be a principal, part-owner, and co-operator of Hocutt, Farms, and Triple J. During that same time period, M. Jay Hocutt is and has been the President of Hocutt.

15. At all times relevant to this complaint, defendant Joey M. Hocutt, another son of James Michael and Judy Hocutt, has been and continues to be a principal, part-owner, and co-operator of Hocutt, Farms, and Triple J. During that same time period, Joey M. Hocutt is and has been the Vice-President of Hocutt.

16. In that capacity, defendant Joey Hocutt contracted on behalf of Hocutt Farms, Inc. with The North Carolina Grower's Association, Inc. ("NCGA") in both early 2014 and early 2015 to submit an application to the U.S. Department of Labor ("DOL") and U.S. Citizenship and Immigration Service ("CIS") to obtain and employ and employed 30-40 temporary agricultural workers to perform various forms of agricultural work from May 15 through November 8 in both 2014 and 2015 with temporary non-immigrant H-2A visas issued pursuant to the H-2A program codified at 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1). Those applications were approved and Triple J and/or the enterprise

of Triple J and Brothers employed from May 15 to November 8, 2014 and presently employ at least 30 Mexican nationals with H-2A visas issued pursuant to 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1) to perform various forms of agricultural work. A true and correct copy of those applications is attached to this Complaint marked as Plaintiff's Exhibits A and B.

17. In the time period from approximately September 1 through November 18, 2014, one or more of the individual Hocutt defendants, Triple J and/or the enterprise of Triple J and Brothers employed an H-2A worker named Deyvi Lopez-Cortes to perform packing house duties for more than three (3) weeks in a packing house operated by defendant Triple J and/or the enterprise of Triple J and Brothers in or around Wilson County, North Carolina.

18. At all times in 2014 that are alleged in ¶¶6(c), 6(e), 6(h), 6(k), 6(m), 6(p), 6(r), 6(u), 6(w), 7(c), and 16-17 above, Triple J, Hocutt, Farms, and all of the individual defendants were the "employer" of plaintiffs Mateo and Trejo, the Gonzalez-Roman plaintiffs, the Cervantes-Vega plaintiffs, plaintiffs Villa, Matias, Reyes, and Villalobos, plaintiff Lopez, and the workers employed in "corresponding employment" that the named plaintiffs seek to represent, and the H-2A

workers described in ¶¶16-17 above within the meaning of the word "employer" as defined in 20 C.F.R. § 655.103(b)(2014).

19. At all times during the same time periods alleged in ¶16 above, all plaintiffs except plaintiff Trejo, the workers that they seek to represent, and the H-2A workers described in ¶¶16-17 above were "employees" of defendants Triple J, the enterprise of Triple J, Farms, and Hocutt within the meaning of the term "employee" as defined in 20 C.F.R. § 655.103(b)(2014).

20. Upon information and belief, at all times relevant to this action, defendants Triple J, Farms, Hocutt, and the enterprise operated by Triple J, Farms, and Hocutt each were and are enterprises that were and are engaged in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

21. Upon information and belief, during each calendar year falling in the four year time period immediately preceding the date on which this action was filed, defendants Triple J, Farms, Hocutt, and the enterprise operated by Triple J, Farms, and Hocutt each had an annual gross volume of sales made or business done of not less than $500,000 exclusive of excise taxes at the retail level that were separately stated.

22. During each calendar year falling in the four year time period immediately preceding the date on this action was

filed, one or more employees of defendants Triple J, Hocutt, Farms, and the enterprise operated by Triple J, Farms, and Hocutt, and the named plaintiffs handled goods or equipment that had moved in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

23. Defendants James Michael Hocutt, his wife Judy Hocutt, and their sons M. Jay Hocutt and Joey M. Hocutt all participated in the day-to-day operation of Triple J, Farms, Hocutt, and the enterprises operated by Triple J, Farms, and/or Hocutt.

24. Either personally and/or through their personal agents and employees, defendants James Michael Hocutt, his wife Judy Hocutt, and their sons M. Jay Hocutt and Joey M. Hocutt (hereinafter referred to as the "individual defendants") all directed, controlled, and supervised the work of the plaintiffs and the workers that the named plaintiffs seek to represent as part of their regular involvement in the day-to-day operations of Triple J, Farms, Hocutt, and the enterprises operated by Triple J, Farms, and/or Hocutt.

VI. <u>FLSA COLLECTIVE ACTION ALLEGATIONS (§ 207(a))(FLSA)</u>

25. Pursuant to the collective action procedure specified at 29 U.S.C. §216(b) and the Third Claim for Relief, all of the named plaintiffs except plaintiff Lopez

file this collective action for each similarly situated person employed in the packing house operated by one or more of the defendants or by an enterprise operated by two or more of the defendants for varying periods of time to pack and process sweet potatoes and other agricultural commodities that were and are produced by person(s) or entities other than the named individual defendants and corporate defendants in whatever form, enterprise, or combination at any time in the time period starting with the first date in the three (3) year time period immediately preceding the date on which such person files a Consent to Sue in this action pursuant to 29 U.S.C. §216(b), and ending with the date final judgment is entered in this action.

26. This FLSA collective action for the Third Claim for Relief is on behalf of those members of the FLSA collective action for all workweeks that occurred in whole or in part during the time periods described in ¶25 above in which all named plaintiffs except plaintiff Lopez and the members of this FLSA collective action were or will not be paid at the hourly rate required by 29 U.S.C. § 207(a)(1) for the hours they performed or will perform work totaling in excess of 40 hours in the same workweek when all or some part of those hours worked were not and/or will

not be performed in connection with the farming operations of all defendants.

27. During the time period described in ¶25 above, all defendants jointly or severally employed all named plaintiffs except plaintiff Lopez and in excess of fifty (50) other employees to pack and process sweet potatoes in excess of 40 hours in the same workweek when all or some part of those hours worked were not and/or will not be performed in connection with the farming operations of all defendants.

28. This collective action is based upon the willful failure of all defendants to pay all named plaintiffs except plaintiff Lopez and the members of this collective action wages free and clear on or before their regular payday for each workweek for the work in excess of 40 hours in those same workweeks that are described in ¶¶26-27 above at the overtime rate required by 29 U.S.C. § 207(a)(1) for each hour worked or part of an hour that all named plaintiffs except plaintiff Lopez and each member of this collective action worked in excess of 40 hours during each of those same workweeks.

VII. RULE 23(b)(3) CLASS ALLEGATIONS (NCWHA #1)

29. The First Claim for Relief is brought under the NCWHA by all named plaintiffs except plaintiff Lopez on behalf of themselves and all other similarly situated

persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

30. In the First Claim for Relief based on the NCWHA, all named plaintiffs except plaintiff Lopez seek to represent a class consisting of all employees of all defendants who were and will not be paid all wages when due on their regular payday at the wage rate disclosed to them pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) for hours worked by those same employees employed at least in part in the defendants' packing house for varying periods of time totaling in excess of 40 hours in the same workweek when that work included in part the packing and/or processing of sweet potatoes and other agricultural commodities that were and are produced by person(s) or entities other than the named individual defendants and corporate defendants. This class includes any such employment that occurred in the time period starting with the first date on which any of those workweeks occurred in whole or in part at any time in the two (2) year time period immediately preceding the date on this action was filed and ending with February 20, 2015 employed.

31. The class alleged in ¶30 above is so numerous and so geographically dispersed as to make joinder impractical. The precise number of individuals in this class is known

only to the defendants. However, the class is believed to include over fifty (50) individuals. This class is comprised of indigent migrant and seasonal agricultural workers and other workers many of whom maintain no permanent residence in the United States. Many of the members in this class are not fluent in the English language and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the members of this class make the maintenance of separate actions by each member of this class infeasible.

32. There are questions of law and fact common to the class alleged in ¶30 above. These common legal and factual questions are, among others:

(a) Pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) and 13 N.C.A.C. Tit. 12 § .0803, did one or more of all defendants disclose to one or more of the named plaintiffs other than plaintiff Lopez and the members of the class defined in ¶30 above that one or more of all defendants would pay wages free and clear at one and one-half the regular hourly wage rate of the named plaintiffs other than plaintiff Lopez and the members of the class and subclass defined in ¶30 above for all hours worked in excess of 40 in the same workweek when no overtime wage exemption applied to that work?

(b) Did the defendants violate the wage payment provisions of N.C.Gen.Stat. § 95-25.6 of the North Carolina Wage and Hour Act ("NCWHA") applicable to the named plaintiffs except plaintiff Lopez and the class defined in ¶30 above by failing to pay wages free and clear at the rate that one or more of all defendants disclosed to them for all hours worked in the defendants' packing house in excess of 40 in the same workweek when no overtime wage exemption applied?

33. The claim in the First Claim for Relief of the named plaintiffs is typical of the claims of the members of the class defined in ¶30 above, and those typical, common claims predominate over any questions affecting only individual class members. All named plaintiffs except plaintiff Lopez have the same interests as other members of the class defined in ¶30 above and will vigorously prosecute these interests on behalf of the class defined in ¶30 above.

34. Other than named plaintiff Lopez, the named plaintiffs will fairly and adequately represent the interests of the class defined in ¶30 above.

35. The undersigned counsel Robert J. Willis of the Law Office of Robert J. Willis, P.A. for the named plaintiffs is an experienced litigator who has been named counsel for several class actions. Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate

this action and to provide notice to the members of the class defined in ¶30 under Rule 23(b)(3).

36. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a) The common issues of law and fact, as well as the relatively small size of the individual claims of each member of the class defined in ¶30 above, substantially diminish the interest of members of the class defined in ¶30 in individually controlling the prosecution of separate actions;

(b) Many members of each of the class defined in ¶30 are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c) There has been no litigation already commenced against any individual defendant or corporate defendant named in this action by the members of the class defined in ¶30 above to determine the questions presented;

(d) It is desirable that the claims be heard in this forum because all defendants reside in this district and the cause of action arose in this district;

(e) A class action can be managed without undue difficulty because all defendants regularly committed the violations complained of herein, and were required to and did

maintain detailed records concerning each member of the class defined in ¶30 above.

VIII. <u>RULE 23(b)(3) CLASS ALLEGATIONS (NCWHA #2)</u>

37. The Second Claim for Relief is brought under the NCWHA by all named plaintiffs on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

38. In the Second Claim for Relief based on the NCWHA, all named plaintiffs seek to represent a class consisting of all U.S. worker employees of one or more defendants who were not be paid all wages when due on their regular payday in 2014 at the adverse effect wage rate ("AEWR") disclosed to them pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) for the hours worked in 2014 by all named plaintiffs and those same workers in those workweeks when they were jointly and/or severally employed by Triple J or by the enterprise of Triple J, Farms, and Hocutt as an agricultural worker to perform "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014).

39. The class defined in ¶38 above includes the following three (3) subclasses:

(a) Name plaintiff Lopez and the migrant agricultural workers who were furnished in 2014 to the defendants by the farm labor contracting duo of Eusebio and Isidoro Armenta

and who were at least jointly employed at any time in the time period from in or about May 15, 2014 through on or about November 8, 2014 by one or more of the defendants and that same farm labor contracting duo to perform the "corresponding employment" that is described in ¶38 above in one or more fields that were owned or controlled by one or more defendants in 2014 and/or in the packing house that was owned or controlled by the defendants in 2014.

(b) The seasonal agricultural workers, including but not limited to, all named plaintiffs other than plaintiffs Lopez and Trejo-Cardona who were directly employed by one or more of the defendants in 2014 to top, sucker, and/or harvest of tobacco, weed various fields, and/or to harvest and/or plant asparagus, sweet potatoes and other vegetables grown by Triple J or by the enterprise of Triple J and one or more other named defendant at any time in the time period from in or about May 15, 2014 through on or about November 8, 2014.

(c) All named plaintiffs other than plaintiff Lopez and those U.S. workers whom Triple J or the enterprise of Triple J, Farms, and Hocutt directly employed at any time in the time period described in ¶17 above to perform any duties in any packing house(s) that one or more of the

defendants owned or controlled at any time in that same time period.

40. The class and subclasses alleged in ¶¶38-39 above are so numerous and so geographically dispersed as to make joinder impractical. The precise number of individuals in this class and these subclasses is known only to the defendants. However, upon information and belief, the class and subclasses are each believed to include over fifty (50) individuals. The class and subclasses are comprised of indigent migrant and seasonal agricultural workers and other workers many of whom maintain no permanent residence in the United States. Many of the members of this class and these subclasses are not fluent in the English language and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the members of the class and subclasses in this action make the maintenance of separate actions by each member of this class and of these subclasses infeasible.

41. There are questions of law and fact common to each class and subclass alleged in ¶¶38-39 above. These common legal and factual questions are, among others:

(a) Pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2) and 13 N.C.A.C. Tit. 12 § .0803, did one or more of all defendants

or the farm labor contracting duo of Eusebio and Isidoro Armenta disclose to any of the named plaintiffs and the members of the class and subclasses defined in ¶¶38-39 above that one or more of all defendants would pay wages free and clear at the adverse effect wage rate required by 20 C.F.R. §§ 655.122(a), 655.122(c), and 655.122(l) for persons employed in "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) for the H-2A workers employed in the work that is described in ¶¶16-17 above?

(b) Did the defendants violate the wage payment provisions of N.C.Gen.Stat. § 95-25.6 of the North Carolina Wage and Hour Act ("NCWHA") applicable to and the class and subclasses defined in ¶¶38-39 above by failing to pay wages free and clear at the AEWR rate that one or more of all defendants disclosed to them for all hours worked at any time in the time period from in or about May 15, 2014 through on or about November 8, 2014?

42. The claims in the Third Claim for Relief of named plaintiff Lopez is typical of the claims of the members of the class and subclasses defined in ¶¶38 and 39(a) above, and those typical, common claims predominate over any questions affecting only individual class members. Named plaintiff Lopez has the same interests as the other members of the

class and subclass defined in ¶¶38 and 39(a) above and will vigorously prosecute these interests on behalf of the class and subclass defined in ¶¶38 and 39(a) above.

43. The claims in the Third Claim for Relief of all of all named plaintiffs other than plaintiffs Trejo-Cardona and Lopez are typical of the claims of the members of the class and subclass defined in ¶¶38 and 39(b) above, and those typical, common claims predominate over any questions affecting only individual class members. All of the named plaintiffs other than plaintiffs Trejo-Cardona and Lopez have the same interests as the other members of the class and subclass defined in ¶¶38 and 39(b) above and will vigorously prosecute these interests on behalf of the class and subclass defined in ¶¶38 and 39(b) above.

44. The claims in the Third Claim for Relief of all of all named plaintiffs other than plaintiff Lopez are typical of the claims of the members of the class and subclass defined in ¶¶38 and 39(c) above, and those typical, common claims predominate over any questions affecting only individual class members. All of the named plaintiffs other than plaintiff Lopez have the same interests as the other members of the class and subclass defined in ¶¶38 and 39(c) above and will vigorously prosecute these interests on behalf of the class and subclass defined in ¶¶38 and 39(c) above.

45. The named plaintiffs will fairly and adequately represent the interests of the class and subclasses defined in ¶¶38-39 above.

46. The undersigned counsel Robert J. Willis of the Law Office of Robert J. Willis, P.A. for all of the named plaintiffs is an experienced litigator who has been named counsel for several class actions. Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the members of the class and subclasses defined in ¶¶38-39 above under Rule 23(b)(3).

47. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a) The common issues of law and fact, as well as the relatively small size of the individual claims of each member of the class and subclasses defined in ¶¶38-39 above, substantially diminish the interest of members of the class and subclasses defined in ¶¶38-39 above in individually controlling the prosecution of separate actions;

(b) Many members of each of the class and subclasses defined in ¶¶38-39 are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c) There has been no litigation already commenced against any individual defendant or corporate defendant named in this action by the members of the class and subclasses defined in ¶¶38-39 above to determine the questions presented;

(d) It is desirable that the claims be heard in this forum because all defendants reside in this district and the cause of action arose in this district;

(e) A class action can be managed without undue difficulty because all defendants regularly committed the violations complained of herein, and were required to and did maintain detailed records concerning each member of the class and subclasses defined in ¶¶38-39 above.

IX. RULE 23(b)(3) CLASS ALLEGATIONS (AWPA)

48. The Fourth Claim for Relief is brought under the AWPA by all named plaintiffs on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

49. In the Fourth Claim for Relief based on the AWPA, all named plaintiffs seek to represent a class consisting of all migrant and seasonal agricultural workers (as the terms "migrant agricultural worker" and "seasonal agricultural worker" are defined in 29 U.S.C. §§ 1802(8) and 1802(10) and 29 C.F.R. §§ 500.20(p) and 500.20(r)) who

performed temporary or seasonal work in agriculture when they were either directly employed by one or more defendants or jointly employed by one or more of the defendants and farm labor contractor Maximo Becerra or the farm labor contracting duo of Eusebio and Isidoro Armenta at any time in the three (3) year time period immediately preceding the date on which this action was filed and continuing thereafter until the date on which final judgment is filed in this action. Except as otherwise alleged, this class consists of the following subclasses for each separate agricultural season that occurred in that same time period:

(a) all named plaintiffs except plaintiffs Trejo and Lopez and those workers that those same named plaintiffs seek to represent pursuant to Rule 23(b)(3) to whom all defendants failed to pay weekly wages in 2014 that were or will be due when they were due for all hours worked when they were directly employed by one or more defendants to perform the type of "corresponding employment" field work that is described in ¶¶6(e), 6(k), 6(p), 6(w), 16, and 18 above when the gross compensation paid did not or will not equal or exceed the product of the hours worked and the specific hourly rate disclosed to those same workers in violation of 29 U.S.C. §§ 1822(a) and 1832(a), and

(b) named plaintiff Lopez and those migrant agricultural workers that named plaintiff Lopez seeks to represent pursuant to Rule 23(b)(3) to whom all defendants failed to pay weekly wages in 2014 that were or will be due when they were due for all hours worked when they were jointly employed by one or more defendants and the farm labor contracting duo of Eusebio and Isidoro Armenta to perform the type of "corresponding employment" field work that is described in ¶¶7(c), 16, and 18 above when the gross compensation paid did not or will not equal or exceed the product of the hours worked and the specific hourly rate disclosed to those same workers in violation of 29 U.S.C. § 1822(a), and

(c) all named plaintiffs except plaintiff Lopez and those workers that those same named plaintiffs seek to represent pursuant to Rule 23(b)(3) to whom all defendants failed to pay weekly wages that were or will be due in 2014 when they were due for all hours worked when they were directly employed by one or more defendants to perform the type of "corresponding employment" packing house work that is described in ¶¶6(c), 6(h), 6(m), 6(r), 6(u), and 17 above when the gross compensation paid did not or will not equal or exceed the product of the hours worked and the specific

hourly rate disclosed to those same workers in violation of 29 U.S.C. §§ 1822(a) and 1832(a), and

(d) named plaintiff Lopez and those migrant agricultural workers that named plaintiff Lopez seeks to represent pursuant to Rule 23(b)(3) to whom all defendants failed to pay weekly wages that were or will be due in 2014 when they were due for all hours worked when they were jointly employed by one or more defendants and the farm labor contracting duo of Eusebio and Isidoro Armenta to perform the type of "corresponding employment" packing house work that is described in ¶¶7(c) and 17 above when the gross compensation paid did not or will not equal or exceed the product of the hours worked and the specific hourly rate disclosed to those same workers in violation of 29 U.S.C. § 1822(a), and

(e) all named plaintiffs except named plaintiffs Trejo and Lopez and those migrant agricultural workers that those same named plaintiffs seek to represent pursuant to Rule 23(b)(3) to whom all defendants failed to ascertain and accurately disclose in writing to each such worker who was recruited at the time of recruitment the wage rates to be paid for their direct employment by all defendants in the type of field work employment that is described in ¶¶5(e), 5(k), 5(p), 5(w), and 16 for the time period from

May 15, 2014 through November 8, 2014 in violation of 29
U.S.C. § 1821(a)(2), and

(f) named plaintiff Lopez and those migrant
agricultural workers that those same named plaintiffs seek
to represent pursuant to Rule 23(b)(3) to whom all
defendants failed to ascertain and accurately disclose in
writing to each such worker who was recruited at the time
of recruitment the wage rates to be paid for their joint
employment by one or more of the defendants and farm labor
contractor Maximo Becerra or the farm labor contracting duo
of Eusebio and Isidoro Armenta in the type of field work
employment that is described in ¶7(c) and 16 for the time
period from May 15, 2014 through November 8, 2014 in
violation of 29 U.S.C. § 1821(a)(2), and

(g) all named plaintiffs except plaintiff Lopez and
those migrant agricultural workers that those same named
plaintiffs seek to represent pursuant to Rule 23(b)(3) to
whom all defendants failed to ascertain and accurately
disclose in writing to each such worker who was recruited
at the time of recruitment the wage rates to be paid for
their direct employment by all defendants in the type of
seasonal packing house work employment that is described in
¶¶6(b)-(c), 6(g)-(h), 6(j), 6(m), 6(o), 6(r), 6(t)-(u), and
25-28 above for the three (3) year time period immediately

preceding December 31, 2014 and continuing until February 10, 2015 in violation of 29 U.S.C. § 1821(a)(2), and

(h) all named plaintiffs except plaintiff Lopez and those workers that those same named plaintiffs seek to represent pursuant to Rule 23(b)(3) to whom all defendants failed to pay all weekly wages that were due when they were due when those workers were directly employed by one or more of the defendants to work in in excess of 40 hours in the same workweek when some or all of those same hours worked in those same workweeks were not and/or will not be performed in connection with the farming operations of all defendants in violation of 29 U.S.C. §§ 1822(a) and 1832(a), and

(i) all named plaintiffs except plaintiff Lopez and Trejo and those workers that those same named plaintiffs seek to represent pursuant to Rule 23(b)(3) for whom all defendants failed to maintain accurate wage records as to the number of hours worked when directly employed by one or more of the defendants in 2014 to perform the type of work that is described in ¶¶¶6(e), 6(k), 6(p), 6(w), 16, and 18 above and/or the total pay period earnings for each such worker for that same type of work in 2014 in violation of 29 U.S.C. §§ 1821(d)(1)(C)-(D) and 1831(c)(1)(C)-(D), and

(j) named plaintiff Lopez and those migrant agricultural workers that plaintiff Lopez seeks to

represent pursuant to Rule 23(b)(3) for whom all defendants failed to maintain accurate wage records as to the number of hours worked when jointly employed by one or more of the defendants and farm labor contractor Maximo Becerra or the farm labor contracting duo of Eusebio and Isidoro Armenta to perform the type of work that is described in ¶¶7(a)-(c), 16, and 18 above and/or the total pay period earnings for each such worker for that same type of work in violation of 29 U.S.C. §§ 1821(d)(1)(C)-(D), and

(k) all named plaintiffs except plaintiff Lopez and Trejo and the migrant and seasonal agricultural workers that those same named plaintiffs seek to represent to whom all defendants failed to provide an itemized statement including accurate information as to the number of hours worked when they were directly employed in 2014 by one or more of the defendants to perform the type of work described in ¶¶6(e), 6(k), 6(p), 6(w), 16, and 18 above and the total pay period earnings for each such worker for the performance of that same type of work in 2014 during the 2014 agricultural season in violation of 29 U.S.C. §§ 1821(d)(2) and 1831(c)(2), and

(l) plaintiff Lopez and the migrant agricultural workers that plaintiff Lopez seeks to represent to whom all defendants failed to provide an itemized statement including accurate information as to the number of hours worked when

they were jointly employed by one or more of the defendants and farm labor contractor Maximo Becerra or the farm labor contracting duo of Eusebio and Isidoro Armenta to perform the type of work described in 7(a)-(c) above and the total pay period earnings for each such worker for the performance of that same type of work during each separate agricultural season that occurred in that same time period in violation of 29 U.S.C. §§ 1821(d)(2), and

(m) all named plaintiffs except plaintiff Lopez and those migrant and seasonal agricultural workers with whom all defendants violated, without justification, in the 2014 season the working arrangement they had with those same workers to pay those workers at the same adverse effect wage rate that defendants Triple J and/or the enterprise of Triple J, Farms, and Hocutt contracted to pay the H-2A workers that they employed during 2014 in violation of 29 U.S.C. §§ 1822(c) and 1832(c) when the defendants directly employed in 2014 the named plaintiffs and those migrant and seasonal agricultural workers to perform the work that is included in the 2014 certified application for the employment of H-2A workers that is attached to this complaint marked as Plaintiff's Exhibit A during the validity period of that application, including any approved extension thereof, and

the work performed by the H-2A worker that is described in ¶17 above, and

(n) named plaintiff Lopez and those migrant agricultural workers with whom all defendants violated, without justification, in the 2014 season the working arrangement they had with those same workers to pay those workers at the same adverse effect wage rate that defendants Triple J and/or the enterprise of Triple J, Farms, and Hocutt contracted to pay the H-2A workers that they employed during 2014 in violation of 29 U.S.C. §§ 1822(c) and 1832(c) when the defendants jointly employed with the farm labor contracting duo of Eusebio and Isidoro Armenta in 2014 named plaintiff Lopez and those migrant agricultural workers to perform the work that is included in the 2014 certified application for the employment of H-2A workers that is attached to this complaint marked as Plaintiff's Exhibit A during the validity period of that application, including any approved extension thereof, and the work performed by the H-2A worker that is described in ¶17 above, and

(o) all named plaintiffs except plaintiff Lopez and those workers that those same named plaintiffs seek to represent pursuant to Rule 23(b)(3) with whom all defendants violated, without justification, the working arrangement to pay all wages at the overtime rate required by federal law

and any applicable FICA taxes on the full amount of wages due for payment of time and one half each worker's regular hourly rate when those workers were directly employed by one or more of the defendants to work in excess of 40 hours in the same workweek when some or all of those same hours worked were not and/or will not be performed in connection with the farming operations of all defendants in violation of 29 U.S.C. §§ 1822(c) and 1832(c), and

(p) all named plaintiffs except plaintiff Lopez and those workers that the named plaintiffs seek to represent pursuant to Rule 23(b)(3) to whom all defendants knowingly provided false or misleading information as to whether all defendants were and/or are exempt from the obligation to pay wages at the overtime rate described in 29 U.S.C. § 207(a)(1) when those workers were directly employed by one or more of the defendants to work in excess of 40 hours in the same workweek when some or all of those same hours worked were not and/or will not be performed in connection with the farming operations of all defendants in violation of 29 U.S.C. §§ 1821(f) and 1831(e), and

(q) named plaintiff Lopez and those migrant agricultural workers that plaintiff Lopez seeks to represent pursuant to Rule 23(b)(3) for whom the defendants used farm labor contractor Maximo Becerra or the farm labor

contracting duo of Eusebio and Isidoro Armenta to house those workers in 2012, 2013, and/or 2014 when the defendants did not first take reasonable steps to determine that farm labor contractor Maximo Becerra and the farm labor contracting duo of Eusebio and Isidoro Armenta possessed a certificate of registration which was valid and which authorized those same farm labor contractors to house those workers in 2012, 2013, and/or 2014 in violation of 29 U.S.C. § 1842, and

(r) named plaintiff Lopez and those migrant agricultural workers that named plaintiff Lopez seeks to represent pursuant to Rule 23(b)(3) to whom all defendants failed to pay weekly wages that were due when they were due for all hours worked when they were jointly employed by one or more defendants and the farm labor contracting duo of Eusebio and Isidoro Armenta to perform the type of field work that is described in ¶¶7(a)-(c) above when the amount of wages was paid on a piece rate basis and the gross compensation paid did not equal or exceed the product of the hours worked and the specific hourly rate required by 29 U.S.C. § 206(a)(1) and/or 20 C.F.R. §§ 655.103(b) and 655.122(l)(2) and disclosed to those same workers by one or more defendants and/or farm labor contractor Maximo Becerra

or the farm labor contracting duo of Eusebio and Isidoro Armenta in violation of 29 U.S.C. § 1822(a), and

(s) named plaintiff Lopez and those migrant agricultural workers that plaintiff Lopez seeks to represent pursuant to Rule 23(b)(3) with whom all defendants violated, without justification, the working arrangement to pay all applicable FICA taxes on the full amount of wages due for payment of the wages that are described in ¶49(r) above in violation of 29 U.S.C. § 1822(c).

50. The class and each subclass alleged in ¶¶49(a)-(s) above are so numerous and so geographically dispersed as to make joinder impractical for the same reasons alleged in ¶31 above.

51. There are questions of law and fact common to the class and each of the subclasses alleged in ¶49(a)-(s) above. These common legal and factual questions are, among others:

(a) For each separate agricultural season that occurred in the time period described in ¶49 above, did all defendants employ or jointly employ the named plaintiffs and the persons described in ¶49 above as migrant or seasonal agricultural workers under the AWPA?

(b) For each agricultural season that occurred in the time period described in ¶49 above, for the migrant and seasonal agricultural workers described in ¶¶49, 49(i), and

49(k) above, did all defendants violate the recordkeeping and wage statement provisions of 29 U.S.C. §§ 1821(d)(1)(B)-(D), 1821(d)(2), 1831(c)(1)(B)-(D), and 1831(c)(2) of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") applicable to all named plaintiffs other than plaintiff Lopez and the class and subclasses defined in ¶¶49, 49(i), and 49(k) above by failing to disclose, make, and preserve wage statements and records which accurately disclosed and recorded the hours worked and the total pay period earnings for all named plaintiffs other than plaintiff Lopez and the members of the class and subclasses defined in ¶¶49(i) and 49(k) above?

(c) For each agricultural season that occurred in the time period described in ¶49 above, for the migrant agricultural workers described in ¶¶49, 49(j), and 49(l) above, did all defendants violate the recordkeeping and wage statement provisions of 29 U.S.C. §§ 1821(d)(1)(B)-(D) and 1821(d)(2) of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") applicable to named plaintiff Lopez and the class and subclasses defined in ¶¶49, 49(j), and 49(l) above by failing to disclose, make, and preserve wage statements and records which accurately disclosed and recorded the hours worked and the total pay period earnings

for named plaintiff Lopez and the members of the class and
subclasses defined in ¶¶49(j) and 49(l)?

(d) for each separate agricultural season that occurred
in time period described in ¶49 above, did all defendants
violate the rights of all named plaintiffs other than
plaintiff Lopez and the members of the class and subclasses
defined in ¶¶49, 49(a), 49(c), and 49(h) above under the
payment when due requirements of 29 U.S.C. §§ 1822(a) and
1832(a) as described in ¶¶49(a), 49(c), and 49(h) above, and
the working arrangement requirements of 29 U.S.C. §§ 1822(c)
and 1832(c) as described in ¶¶49(m) and 49(o) above in the
manner alleged in ¶¶49(m) and 49(o) above?

(e) for each separate agricultural season that occurred
in time period described in ¶49 above, did all defendants
violate the rights of named plaintiff Lopez and the members
of the class and subclasses defined in ¶¶49, 49(b), 49(d),
and 49(r) above under the payment when due requirements of 29
U.S.C. § 1822(a) as described in ¶¶49(b), 49(d), and 49(r)
above, and the working arrangement requirements of 29 U.S.C.
§ 1822(c) as described in ¶¶49(n) and 49(s) above in the
manner alleged in ¶¶49(n) and 49(s) above?

(f) for each separate agricultural season that occurred
in the time period alleged in ¶49 above, did all defendants
violate the rights of all plaintiffs other than plaintiff

Lopez and the members of the class and subclass defined in ¶¶49 and 49(p) above with respect to the prohibition against the provision of false or misleading information in 29 U.S.C. §§ 1821(f) and 1831(e) as described in ¶49(p) above in the manner alleged in ¶49(p) above.

(g)  for each separate agricultural season that occurred in the time period described in ¶49 above, did all defendants violate the rights of all named plaintiffs other than plaintiff Lopez and the members of the class and subclasses defined in ¶¶49, 49(e), and 49(g) above with respect to the wage rate disclosure requirements of 29 U.S.C. § 1821(a)(2) as described in ¶¶49(e) and 49(g) above in the manner alleged in ¶¶49(e) and 49(g) above?

(h)  for each separate agricultural season that occurred in the time period described in ¶49 above, did all defendants violate the rights of named plaintiff Lopez and the members of the class and subclasses defined in ¶¶49 and 49(f) above with respect to the wage rate disclosure requirements of 29 U.S.C. § 1821(a)(2) as described in ¶49(f) above in the manner alleged in ¶49(f) above?

(i)  for each separate agricultural season that occurred in the time period described in ¶49 above, did all defendants violate the rights of named plaintiff Lopez and the members of the class and subclasses defined in ¶¶49 and 49(q) above

with respect to defendants' statutory obligations to verify farm labor contractor authorization of 29 U.S.C. § 1842 as described in ¶49(q) above in the manner alleged in ¶49(q) above?

52. The claims of the named plaintiffs in the Fourth Claim for Relief are typical of the claims of the members of the class and subclasses defined in ¶¶49 and 49(a)-(s) above, and those typical, common claims predominate over any questions affecting only individual class and/or subclass members. The named plaintiffs have the same interests as to other members of the class and subclasses defined in ¶¶49 and 49(a)-(s) above and will vigorously prosecute these interests on behalf of the class and subclasses defined in ¶¶49 and 49(a)-(s) above.

53. The named plaintiffs will fairly and adequately represent the interests of the class and subclasses defined in ¶¶49 and 49(a)-(s) above.

54. The undersigned counsel Robert J. Willis of the Law Office of Robert J. Willis, P.A. for all Plaintiffs is an experienced litigator who has been named counsel for several class actions. Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the members of the class and

subclasses defined in ¶¶49 and 49(a)-(s) above under Rule 23(b)(3).

55. The reasons, *inter alia*, that a class action under Rule 23(b)(3) is superior to other available methods of adjudicating the controversy alleged with respect to the class and subclasses defined in ¶¶45 and 45(a)-(k) above are the same as those alleged in ¶36(a)-(e) above with respect to the class and subclasses defined in ¶¶49 and 49(a)-(s) above.

X.   <u>FACTUAL ALLEGATIONS</u>

56. At all times during their employment by one or more of the named defendants at any time in the time period from December 31, 2011 to the present date all of the named plaintiffs were and are United States workers within the definition of 20 C.F.R. Section 655.102(b)(2015).

57. With one exception, the defendants directly, jointly and severally employed all of the named plaintiffs and the members of the collective action, classes, and subclasses of migrant and seasonal agricultural workers defined in ¶¶25-26, 30, 38-39, 49, and 49(a)-49(s) to perform seasonal labor in each tobacco, pepper, squash, pumpkin, asparagus, and sweet potato planting and harvest season that occurred in the time period from December 31, 2011 through and including February 15, 2015 to perform planting, weeding,

harvest, and other agricultural and non-agricultural work for all defendants.

58. The exception is that during the time period described in ¶57 above, plaintiff Lopez and the crews of migrant agricultural workers described in ¶¶39(a) and 49 above were furnished to the defendants in 2012, 2013 and 2014 during the same seasons described in ¶57 above by farm labor contractor Maximo Becerra in 2012 and by the farm labor contracting duo of Eusebio and Isidoro Armenta in 2013 and 2014 to perform planting, weeding, harvest, and other agricultural and non-agricultural work for all defendants on both an hourly and piece rate basis.

59. For the time period starting with on or about May 15, 2014 through at least on or about November 8, 2014, and again from on or about May 15, 2015 through the present date and contracted through November 8, 2015, defendant Triple J and/or an enterprise of Triple J, Farms, and Brothers employed and are contracted to employ at least 30 Mexican nationals with H-2A visas as described in ¶¶16-17 above pursuant to the labor certification applications that are attached to this Complaint marked as Plaintiff's Exhibits A and B.

60. For some part of more than six (6) workweeks in 2014 after May 15 and before November 8, 2014, defendant

Triple J and/or an enterprise of Triple J, Farms, and Brothers employed all of the named plaintiffs except plaintiff Trejo and the class and subclasses of U.S. workers described in ¶¶38 and 39(a)-(b) above to perform "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) to grow, harvest, and process tobacco and other agricultural commodities in that same time period.

61. For some part of more than three (3) weeks in 2014 after September 1 and before November 18, 2014, defendant Triple J and/or an enterprise of Triple J, Farms, and Brothers employed plaintiff Trejo and one or more of the other named plaintiffs and the class and subclass of U.S. workers described in ¶¶38 and 39(c) above to perform "corresponding employment" as that term is defined in 20 C.F.R. § 655.103(b)(2014) to perform packing house work in one or more packing house(s) owned and/or operated by one or more of the named defendants.

62. Upon information and belief, pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2), for each sweet potato harvest and planting season that occurred in each year from January 1, 2011 forward, all defendants disclosed to the named plaintiffs other than plaintiff Lopez and to the members of the class defined in ¶30 above by both written

individual disclosure forms and posted statements that were and are maintained in a place accessible to the named plaintiffs and the members of the class defined in ¶30 above that one or more of all defendants would pay wages free and clear at one and one-half the regular hourly wage rate of the named plaintiffs and the members of the class defined in ¶30 above for all hours worked in excess of 40 in the same workweek when no overtime wage exemption applied to that work.

63. Upon information and belief, pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2), for the tobacco growing and harvesting season and other agricultural crop harvesting season that occurred in the time period from on or about May 15, 2014 through on or about November 8, 2014, Triple J and/or an enterprise consisting of Triple J, Farms, and Brothers and/or the farm labor contractors identified in ¶58 above who jointly employed plaintiff Lopez and the other migrant agricultural workers they furnished to the defendants in 2014 disclosed to the class and subclasses defined in ¶¶38 and 39(a)-(b) above and to all of the named plaintiffs other than plaintiff Trejo by both written individual disclosure forms and posted statements that were and are maintained in a place accessible to those same named plaintiffs and the members of the class and subclasses defined in ¶¶38 and

39(a)-(b) above that one or more of all defendants would pay wages free and clear to that same class and those subclasses of workers at the same adverse effect wage rate of $9.87 per hour for all hours worked that Triple J and/or an enterprise of Triple J, Farms, and Brothers paid the Mexican nationals described in ¶59 above.

64. Upon information and belief, pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2), for the sweet potato processing and packing season and other agricultural crop packing and processing season that occurred in the time period from on or about May 15, 2014 through on or about November 18, 2014, Triple J and/or an enterprise consisting of Triple J, Farms, and Brothers and/or the farm labor contractors identified in ¶58 above who jointly employed plaintiff Lopez and the other migrant agricultural workers they furnished to the defendants in 2014 disclosed to all of the named plaintiffs and the class and subclasses defined in ¶¶38 and 39(c) above by both written individual disclosure forms and posted statements that were and are maintained in a place accessible to those same named plaintiffs and the members of the class and subclass defined in ¶¶38 and 39(c) above that one or more of all defendants would pay wages free and clear to that same class and subclass of workers at the same adverse effect wage rate of $9.87 per hour for all hours

worked that Triple J and/or an enterprise of Triple J, Farms, and Brothers paid the Mexican nationals described in ¶¶17 and 59 above.

65. Upon information and belief, pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2), for each of the three (3) tobacco growing and harvesting seasons and other agricultural crop harvesting seasons that occurred in the three year time period immediately preceding the date on which this action was filed, one or more of the defendants and/or the farm labor contractors identified in ¶58 above who jointly employed plaintiff Lopez and the other migrant agricultural workers they furnished to the defendants in 2012, 2013, and/or 2014 disclosed to all of the named plaintiffs and the class and subclasses defined in ¶¶49 and 49(a)-(s) above by both written individual disclosure forms and posted statements that were and are maintained in a place accessible to those same named plaintiffs and the members of the class and subclasses defined in ¶¶49 and 49(a)-(s) above that one or more of all defendants would pay wages free and clear to that same class of workers at the disclosed and/or required hourly rate for all hours worked as the term "hours worked" is defined by N.C.Gen.Stat. §§ 95-25.2(8).

66. Based at least in part upon the disclosures described in ¶62 above, all named plaintiffs and, as alleged

in ¶¶30, 49, 49(h), and 49(o), the members of the class and/or subclasses described in ¶¶30, 49, 49(h), and 49(o) had an agreement and working arrangement with all defendants that the defendants would pay promised wages to those same named plaintiffs and the members of those same classes and/or subclasses and the applicable taxes on those wages for the packing house work that is described in ¶30 above pursuant to the terms of those same disclosures.

67. Based at least in part upon the disclosures described in ¶63 above, all named plaintiffs except plaintiff Trejo and, as alleged in ¶¶38, 39(a)-(b), 49, and 49(a)-(b), the members of the class and/or subclasses described in ¶¶38, 39(a)-(b), 49, and 49(a)-(b) had an agreement and working arrangement with Triple J and/or an enterprise operated by Triple J, Farms, and Brothers to pay promised wages to all those same named plaintiffs and the members of the class and/or subclasses defined in ¶¶38, 39(a)-(b), 49, 49, and 49(a)-(b) for the field work described in ¶¶38(a)-(b) above pursuant to the terms of those same disclosures.

68. Based at least in part upon the disclosures described in ¶64 above, plaintiff Trejo, one or more other named plaintiff, and, as alleged in ¶¶49 and 45(c)-(d), the members of the class and/or subclass described in ¶¶49 and 45(c)-(d) had an agreement and working arrangement with all

defendants, Triple J, and/or an enterprise operated by Triple J, Farms, and Brothers to pay promised wages when due for all hours worked to named plaintiff Trejo, one or more other named plaintiff, and the members of the class and/or subclass defined in ¶¶49 and 45(c)-(d) for the packing house work described in ¶¶17 and 38(c) above pursuant to the terms of those same disclosures.

69.  Based at least in part upon the disclosures described in ¶65 above, plaintiff Lopez and the migrant agricultural workers that he seeks to represent in the class and subclasses defined in ¶¶49, 49(r), and 49(s) had an agreement and working arrangement with all defendants, Triple J, and/or an enterprise operated by Triple J, Farms, and Brothers to pay promised wages when due for all hours worked and payment of applicable wage taxes to and for named plaintiff Lopez and the members of the class and/or subclass defined in ¶¶49, 49(r), and 49(s) for all field work paid on a piece rate basis that plaintiff Lopez and the other members of the crews described in ¶58 above performed for the defendants when they were furnished to and jointly employed by one or more of the defendants.

70.  As part of the employment of plaintiff Lopez and the other migrant agricultural workers that is described in ¶¶7(a)-(c), 58, 65, and 69 above by all defendants during a

substantial number of each of the time periods and workweeks that are described in ¶¶38, 39(a), and 49 above, the defendants jointly employed the named plaintiff Lopez and approximately 25 other members of the crews of migrant agricultural workers described in ¶58 above to plant, top, sucker, and harvest tobacco, and to harvest sweet potatoes and other vegetables at either a specified hourly rate or a specified piece rate.

71. All defendants did not accurately record the start and stop times or hours worked by plaintiff Lopez and the migrant agricultural workers referred to in ¶65 above and the classes and subclasses of workers described in ¶¶49 and 49(b), 49(d), 49(f), 49(j), 49(l), 49(n), 49(q), 49(r), and 49(s) above.

72. As a result, all defendants did not pay named plaintiff Lopez and the class and subclasses of workers described in ¶¶49 and 49(b), 49(d), 49(f), 49(j), 49(l), 49(n), 49(q), 49(r), and 49(s) all the wages they were due when they were due on their regular payday. In at least ten workweeks in each of the three years immediately preceding the date on which this action was filed, those same named plaintiffs and the members of that same subclass were shorted more than two hours of the pay that they were due when the average hourly rate that plaintiff Lopez and the other

members of those crews of migrant agricultural workers earned on the piece rate at which they were compensated was not equal to the minimum rate required by 29 U.S.C. Section 206(a) or 20 C.F.R. Section 655.122(l)(2).

73. During a substantial number of the workweeks that described in each of the time periods that are described in ¶¶25-26, 30, 49, and 49(h) above, all defendants employed all of the named plaintiffs except plaintiff Lopez and the members of the collective action described in ¶¶25-26 and the class and/or subclass described in ¶¶30, 49, and 49(h) above to perform work for all defendants in the form of the packing and/or processing of sweet potatoes that were produced by persons other than all defendants. Upon information and belief, those persons and/or entities other than all defendants regularly and periodically included but are not limited to Jimmy D. Jones, Boykin Farms, Boyette Farms, and other unknown sweet potato producers.

74. During a substantial number of the same workweeks that described in ¶¶25-26, 30, 38, 39(c), 49, 49(c)-(d), and 49(h) above, all named plaintiffs and the members of the collective action described in ¶¶25-26 and the class and subclasses described in ¶¶30, 38, 39(c), 49, 49(c)-(d), and 49(h) above performed the work that is described in ¶¶57 and 73 above so that the total of hours worked in one or more of

those same workweeks by the named plaintiffs and the members of that same collective action and the those same class and subclasses in a substantial number of workweeks described in ¶¶25-26, 30, 38, 39(c), 49, 49(c)-(d), and 49(h) above exceeded 40 hours.

75. For the work that is described in ¶¶73-74 above, all defendants intentionally did not compensate the named plaintiffs and the class and subclasses defined in ¶¶30, 49, 49(c)-(d), and 49(h) above at the wage rate they were due when those wage were due pursuant to the terms of the disclosures described in ¶62 above and in violation, without justification, of the agreement and working arrangement described in ¶66 above.

76. Plaintiff Mateo's regular hourly wage rate set by all defendants was $7.75 per hour for at least part of 2013, $8.00 per hour starting in January 2014, and $8.25 per hour starting later in 2014. With exception of plaintiff Lopez and plaintiff Trejo, the defendants paid the other named plaintiffs at similar if not identical hourly rates.

77. The wage rate set by all defendants for plaintiff Trejo was $8.00 per hour for at least part of 2013 and increased to more than $8.00 per hour in 2014.

78. For the work that is described in ¶¶73-75 above, all defendants compensated the named plaintiffs other than

plaintiff Lopez and the members of the collective action that is defined in ¶¶25-26 above at a straight regular hourly rate, and not at the overtime rate required by 29 U.S.C. § 207(a).

79. For the work that is described in ¶¶73-75 above, all defendants violated their working arrangement described in ¶66 above with all named plaintiffs and the members of the class and subclasses defined in ¶¶30, 38, 39(c), 49, 49(h), and 49(o) by paying those workers at a straight regular hourly rate, and not at one and one-half the regular hourly rate of the named plaintiffs and those workers that all defendants had disclosed to them as part of their working arrangement pursuant N.C.Gen.Stat. §§ 95-25.13(1)-(2).

80. During all of the workweeks that are described in ¶¶6(c), 6(e), 6(h), 6(k), 6(m ), 6(p), 6(r), 6(u), 6(w), 7(a)-(c), 16-17, and 63-64 above, defendants Triple J and/or an enterprise operated by defendants Triple J, Farms, and Brothers intentionally paid all of the named plaintiffs and the U.S. worker members of the class and subclasses defined in ¶¶38, 39(a)-(b), 49(a)-(d), 49(h), and 49(o) above based upon a regular rate and wage rate that was less than the applicable AEWR of $9.87 per hour for all hours worked during that same time period.

81. For the work that is described in ¶¶7(a)-(c), 58,

and 70-72 above, all defendants intentionally did not compensate all named plaintiff Lopez and the class and/or subclasses defined in ¶¶49, 49(r), and 49(s) above at the hourly wage rate they were due when those wage were due pursuant to the terms of the disclosures described in ¶65 above and in violation of the agreement and working arrangement described in ¶69 above.

82. During each agricultural season that occurred in the 3-year time period immediately preceding the date on which this action was filed and continuing, on information and belief, through the date that final judgment is entered in this action, all defendants intentionally did not and will not keep or maintain any accurate records as to the number of hours worked and total pay period earnings for any field work of the type that is described in ¶¶6(e), 6(h), 6(k), 6(m), 6(p), 6(r), 6(u), 6(w), 7(a)-(c), 57-58, and 70-72 above that was performed by all named plaintiffs and the members of the class and subclasses defined in ¶¶30, 49, 49(i), and 49(j) above.

83. During each agricultural season that occurred in the 3-year time period immediately preceding the date on which this action was filed and continuing, upon information and belief, through at least January 31, 2015, all defendants intentionally did not provide to all named

plaintiffs and the members of the class and subclasses defined in ¶¶30, 49, 49(a)-(d), 49(o), 49(k), 49(l), 49(r), and 49(s) above itemized wage statements with accurate information as to the number of hours worked and total pay period earnings for any field work of the type that is described in ¶¶6(e), 6(h), 6(k), 6(m), 6(p), 6(r), 6(u), 6(w), 7(a)-(c), 57-58, and 70-72 above that was performed by all named plaintiffs and the members of those same classes and subclasses.

84. During each agricultural season that occurred in the 3-year time period immediately preceding the date on which this action was filed and continuing, on information and belief, through the date that final judgment is entered in this action, all defendants intentionally failed, without any justification, to comply with the terms of the working arrangements and disclosures that are described in ¶¶62 and 66 above.

85. During each agricultural season that occurred in the 3-year time period immediately preceding the date on which this action was filed and continuing, on information and belief, through at least January 31, 2015, all defendants knowingly and intentionally provided false or misleading information to all named plaintiffs except plaintiff Lopez and the class or subclass of persons

defined in ¶¶49 and 49(p) above that all defendants were not obligated to pay wages to those same workers at the overtime rate described in 29 U.S.C. § 207(a)(1) for the work that is described in ¶¶73-74 above when all defendants knew that all defendants were not exempt from the obligation to pay at that same overtime rate pursuant to the exemption specified in 29 U.S.C. § 213(b)(12) because all defendants knew that all defendants were regularly and periodically packing and/or processing and continue to regularly and periodically pack and/or process sweet potatoes and/or agricultural products produced by farmers other than all defendants as alleged in ¶73 above of this complaint.

86. During the time period described in ¶¶¶¶6(e), 6(h), 6(k), 6(m), 6(p), 6(r), 6(u), 6(w), 7(a)-(c), 16-17, 57-58, and 70-72 above, and continuing, on information and belief, through the date that final judgment is entered in this action, all defendants failed and, upon information and belief, will fail to ascertain and accurately disclose in writing to all named plaintiffs and each member of the class and subclasses defined in ¶¶49 and 49(e)-(f) above at the time of their recruitment for employment the wage rates to be paid for their employment by all defendants for the type of employment described in ¶¶¶¶6(e), 6(h), 6(k), 6(m),

6(p), 6(r), 6(u), 6(w), 7(a)-(c), 16-17, 57-58, and 70-72
above in violation of 29 U.S.C. § 1821(a)(2).

87. Upon information and belief, as experienced
agricultural employers who have participated in more than
one session to educate them as to their obligations under
the FLSA, the NCWHA, and the AWPA, all defendants were on
notice of their obligations under the FLSA, the NCWHA, and
the AWPA, and acted in reckless disregard of those
obligations in 2011, 2012, 2013, and 2014.

88. While some of the named plaintiffs have voluntarily
terminated their employment by the defendants, there is one
exception to those circumstances – that exception is the
defendants' retaliatory discharge of plaintiff Trejo on or
about February 23, 2015 because of and on account of his
leadership role in his and his co-workers' demand that the
defendants fully comply with their statutory rights under the
FLSA, the NCWHA, and the AWPA.

89. That demand consisted of a December 31, 2014 formal
written demand to all of the defendants through counsel for
plaintiffs Mateo and Trejo for payment of all wages due to
those two named plaintiffs when they were due, compliance
with their working arrangement with those named plaintiffs to
pay them and their co-workers at the same wage rate the

defendants paid to H-2A workers in 2014, and to pay of the overtime rate required by the FLSA.

90. Rather than accept those demands and the plaintiffs' demand to modify the plaintiffs' working arrangement with the defendants, the defendants embarked on a series of actions that were intended to inhibit the two original named plaintiffs Mateo and Trejo in their pursuit of the vindication of their rights under the FLSA, the AWPA, and the NCWHA.

91. That series of actions started with the termination of plaintiff Trejo's employment on or about February 23, 2015.

92. The defendants attempted to justify that termination with the pretextual explanation that plaintiff Trejo had "stolen" a quantity of sweet potatoes that the defendants had discarded as part of the defendants' regular sweet potato order processing procedure. That procedure included the defendants' longstanding permission to its employees to convert such discarded sweet potatoes for the employees' own use.

93. When plaintiff acted again on this permission in late February 2015, as he had on more than one occasion before December 31, 2014, the defendants seized upon this as

a pretext to fire him for an alleged theft of the defendants' discarded sweet potatoes.

94. This discharge was followed a few days later by an attempt by defendant Judy Hocutt to effect the self-help forceful eviction of plaintiff Trejo from some defendants-provided housing without proper notice or legal process.

95. There followed an extended time period of attempts to resolve this matter pursuant by private negotiation that culminated in a face to face, all-day meeting in Wilson, North Carolina on April 20, 2015 between defendants James Michael Hocutt and Joey Hocutt and plaintiffs Mateo, Trejo, and Gilberto Cervantes-Vega.

96. During that extended time period before that April 20 meeting, the original two (2) named plaintiffs Mateo and Trejo were successful in their efforts to confer about their mutual claims and concerns as to the violation of their FLSA, NCWHA, and AWPA rights with a number of their migrant agricultural worker co-employees at the packing house of the defendants.

97. The identity of the co-employees who participated in these conferences with the two original named plaintiffs Mateo and Trejo became know to at least defendants James Michael Hocutt and Joey Hocutt before the April 20 meeting.

98. Both defendant Hocutt and the three (3) named plaintiffs were represented by counsel at the April 20 meeting. The three (3) named plaintiffs were also assisted at that April 20 meeting by a representative of the Farm Labor Organizing Committee, AFL-CIO (hereinafter "FLOC").

99. The participants in the April 20 meeting were not successful in resolving the plaintiffs' claims, including, but not limited, to the retaliatory discharge of plaintiff Trejo.

100. Beginning with the first workweek following that April 20 meeting, the defendants started to intentionally discriminate against all named plaintiffs in the allocation of the quantity of hours of packing house work so that all nine (9) of the named plaintiffs who continued in the employ of the defendants after April 20 were denied hours of work which required the payment of wages at the overtime rate required by 29 U.S.C. § 207(a)(1).

101. After April 20, 2015, the defendants intentionally selected workers other than the nine (9) named plaintiffs to perform packing house work that averaged approximately 60 hours per week for those other workers after April 20. Those workers who received those greater hours of work so as to receive wages at an overtime rate of pay included Marcelo

LNU, Christian LNU, Fidel LNU, Rogelio Gonzalez, Victor LNU, Edgar LNU, Ignacio Trejo, and Prisco LNU.

102. None of the workers identified in ¶101 participated in the conferences with the original two named plaintiffs and those other employees identified in ¶¶95-96 above.

103. To date, the defendants continue to discriminate and retaliate against the nine (9) named plaintiffs who continue to be employed by the defendants in the allocation of extra work over 40 hours in the same workweek which would result in payment of wages at the overtime rate required by 29 U.S.C. § 207(a)(1).

XI.   <u>FIRST CLAIM FOR RELIEF (NCWHA #1)</u>

104 Paragraphs 5 through 22, 29-36, and 56-103, inclusive, above are realleged and incorporated herein by reference by all named plaintiffs except plaintiff Lopez and each member of the class defined in ¶30 of this complaint that all named plaintiffs seek to represent pursuant to Rule 23(b)(3), Fed.R.Civ.P., against all defendants under the North Carolina Wage and Hour Act, N.C.Gen.Stat. §§ 95-25.1 *et seq*.

105. As alleged in ¶¶56, 62, 65-66, 69-80, and 83 above, all defendants violated and will violate their duty to all named plaintiffs except plaintiff Lopez and the class defined

in ¶30 above to pay all wages under N.C.Gen.Stat. § 95-25.6 when those wages were due pursuant to the terms of the agreement and disclosures that are described in ¶¶62, 65-66, 69-70 above that all defendants made with all named plaintiffs other than plaintiff Lopez and the members of the class and subclasses defined in ¶30 above.

106. As a result of the actions or omissions of all defendants that are described or referred to in ¶¶29-36 and 56-88 above of this complaint, all named plaintiffs except plaintiff Lopez and each person who is a member of the class and subclasses defined in ¶30 above of this complaint have suffered damages in the form of unpaid wages and liquidated damages that may be recovered under N.C.Gen.Stat. §§ 95-25.6, 95-25.22(a), and 95-25.22(a1).

XII. <u>SECOND CLAIM FOR RELIEF (NCWHA #2)</u>

107. Paragraphs 5 through 22, 37-47, and 56-103, inclusive, above are realleged and incorporated herein by reference by all named plaintiffs and each member of the class and subclasses defined in ¶¶38 and 39(a)-(c) of this complaint that all named plaintiffs seek to represent pursuant to Rule 23(b)(3), Fed.R.Civ.P., against defendants Triple J and/or an enterprise as defined by N.C.Gen.Stat. § 95-25.2(18) operated by Triple J, defendant Farms, and

defendant Brothers under the North Carolina Wage and Hour Act, N.C.Gen.Stat. §§ 95-25.1 *et seq.*

108. As alleged in ¶¶63-64, 67-68, 73-74, and 79-81, inclusive, above, defendant Triple J or an enterprise operated by Triple J, defendant Farms, and defendant Brothers violated their duty to all of the named plaintiffs and the class and subclasses defined in ¶¶38 and 39(a)-(c) above to pay all wages under N.C.Gen.Stat. § 95-25.6 when those wages were due pursuant to the terms of the agreement and disclosures that are described in ¶¶63-64, 67-68, 73-74 and 79-81, inclusive, above, that defendant Triple J or an enterprise operated by Triple J, defendant Farms, and defendant Brothers made to and has and had with the named plaintiffs and the members of the class and subclasses defined in ¶¶38 and 39(a)-(c).

109. As a result of the actions or omissions of defendant Triple J and/or an enterprise operated by defendant Triple J, defendant Farms, and defendant Brothers that are described or referred to in ¶¶37-47 and 56-88 above of this complaint, all named plaintiffs and each person who is a member of the class and subclasses defined in ¶¶38 and 39(a)-(c) above of this complaint have suffered damages in the form of unpaid wages and liquidated damages that may be recovered under N.C.Gen.Stat. §§ 95-25.6, 95-25.22(a), and 95-

25.22(a1).

XIII. THIRD CLAIM FOR RELIEF (FLSA § 207)

110. Paragraphs 5 through 22, 25-28, 56-88, inclusive, above are realleged and incorporated herein by reference by all named plaintiffs and each member of the collective action defined in ¶¶25-26 above of this complaint that all of the named plaintiffs except plaintiff Lopez seek to represent pursuant to 29 U.S.C. § 216(b) against all defendants under §§ 207(a)(1) and 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

111. As alleged in ¶¶73-75 above, all defendants violated their duty to all named plaintiffs and the members of the collective action defined in ¶¶25-26 above to pay wages at the overtime rate required by 29 U.S.C. § 206(a) for the work described in ¶¶73-80 above that all named plaintiffs except plaintiff Lopez and the members of the collective action defined in ¶¶25-26 above performed for all defendants.

112. As a result of the willful actions or omissions of all defendants that are described or referred to in ¶¶5-88 inclusive, above of this complaint, all named plaintiffs except plaintiff Lopez and each person who is a member of the collective action defined in ¶¶25-26 above of this complaint have suffered damages in the form of underpayment of wages and liquidated damages that may be recovered under 29 U.S.C.

§§ 207(a)(1) and 216(b).

XIV. <u>FOURTH CLAIM FOR RELIEF (AWPA)</u>

113. Paragraphs 5 through 22 and 56-103, inclusive, above are realleged and incorporated herein by reference by all named plaintiffs and each member of the classes and subclasses defined in ¶¶49 and 49(a)-(s) above of this complaint that all named plaintiffs seek to represent pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure against all defendants under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 et seq.

114. Except as specifically alleged below, during each agricultural season that occurred in the 3-year time period immediately preceding the date on which this action was filed and continuing, on information and belief, through the date that final judgment is entered in this action, all defendants intentionally violated the AWPA and its implementing regulations in the following ways with respect to the following subclasses of the class defined in ¶49 above:

(a) The defendants failed to pay weekly wages in 2014 that were due when they were due to those plaintiffs and other workers who were directly employed by one or more of the defendants for all hours worked when one or more of the

defendants directly employed those plaintiffs and other workers to perform the type of "corresponding employment" field work that is described in ¶¶6(e), 6(k), 6(p), 6(w), 16, and 18 above when the gross compensation paid did not equal or exceed the product of the hours worked and the specific hourly rate disclosed to those same workers in violation of 29 U.S.C. §§ 1822(a) and 1832(a), and

(b) The defendants failed to pay weekly wages in 2014 that were due when they were due for all hours worked when to plaintiff Lopez and those other workers who were jointly employed by one or more defendants and the farm labor contracting duo of Eusebio and Isidoro Armenta in 2014 to perform the type of "corresponding employment" field work that is described in ¶¶7(c), 16, and 18 above when the gross compensation paid did not equal or exceed the product of the hours worked and the specific hourly rate disclosed to those same workers in violation of 29 U.S.C. § 1822(a), and

(c) The defendants failed to pay weekly wages that were due in 2014 when they were due for all hours worked to those plaintiffs and other workers who were directly employed by one or more defendants to perform the type of "corresponding employment" packing house work that is described in ¶¶6(c), 6(h), 6(m), 6(r), 6(u), and 17 above when the gross compensation paid did not or will not equal or

exceed the product of the hours worked and the specific hourly rate disclosed to those same workers in violation of 29 U.S.C. §§ 1822(a) and 1832(a), and

(d)  The defendants failed to pay named plaintiff Lopez and other workers weekly wages that were due in 2014 when they were due for all hours worked when they were jointly employed in 2014 by one or more defendants and the farm labor contracting duo of Eusebio and Isidoro Armenta to perform the type of "corresponding employment" packing house work that is described in ¶¶7(c) and 17 above when the gross compensation paid did not equal or exceed the product of the hours worked and the specific hourly rate disclosed to those same workers in violation of 29 U.S.C. § 1822(a), and

(e)  The defendants failed to ascertain and accurately disclose in writing to the named plaintiffs other than plaintiff Lopez and each worker who was recruited at the time of recruitment the wage rates to be paid for their direct employment by all defendants in the type of field work employment that is described in ¶¶5(e), 5(k), 5(p), 5(w), and 16 above for the time period from May 15, 2014 through November 8, 2014 in violation of 29 U.S.C. § 1821(a)(2), and

(f)  The defendants failed to ascertain and accurately disclose in writing to named plaintiff Lopez and each

worker who was recruited at the time of recruitment the wage rates to be paid for those workers who were jointly employed in 2014 by one or more of the defendants and farm labor contractor Maximo Becerra or the farm labor contracting duo of Eusebio and Isidoro Armenta in the type of field work employment that is described in ¶7(c) and 16 for the time period from May 15, 2014 through November 8, 2014 in violation of 29 U.S.C. § 1821(a)(2), and

(g) The defendants failed to ascertain and accurately disclose in writing to the named plaintiffs other than plaintiff Lopez and each other worker who was recruited at the time of recruitment the wage rates to be paid for their direct employment by all defendants in the type of seasonal packing house work employment that is described in ¶¶6(b)-(c), 6(g)-(h), 6(j), 6(m), 6(o), 6(r), 6(t)-(u), and 25-28 above for the three (3) year time period immediately preceding December 31, 2014 and continuing until February 10, 2015 in violation of 29 U.S.C. § 1821(a)(2), and

(h) The defendants failed to pay all weekly wages that were due when they were due when those workers were directly employed by one or more of the defendants to work in in excess of 40 hours in the same workweek when some or all of those same hours worked in those same workweeks were not and/or will not be performed in connection with the farming

operations of all defendants in violation of 29 U.S.C. §§ 1822(a) and 1832(a), and

(i) The defendants failed to maintain accurate wage records as to the number of hours worked by the named plaintiffs other than plaintiff and other workers when those workers were directly employed by one or more of the defendants in 2014 to perform the type of work that is described in ¶¶¶6(e), 6(k), 6(p), 6(w), 16, and 18 above and/or the total pay period earnings for each such worker for that same type of work in 2014 in violation of 29 U.S.C. §§ 1821(d)(1)(C)-(D) and 1831(c)(1)(C)-(D), and

(j) The defendants failed to maintain accurate wage records as to the number of hours worked by plaintiff Lopez and other workers when they were jointly employed by one or more of the defendants and farm labor contractor Maximo Becerra or the farm labor contracting duo of Eusebio and Isidoro Armenta to perform the type of work that is described in ¶¶7(a)-(c), 16, and 18 above and/or the total pay period earnings for each such worker for that same type of work in violation of 29 U.S.C. §§ 1821(d)(1)(C)-(D), and

(k) the defendants failed to provide the named plaintiffs other than plaintiff Lopez and other directly employed workers an itemized statement including accurate information as to the number of hours worked when they were

directly employed in 2014 by one or more of the defendants to perform the type of work described in ¶¶¶6(e), 6(k), 6(p), 6(w), 16, and 18 above and the total pay period earnings for each such worker for the performance of that same type of work in 2014 during the 2014 agricultural season in violation of 29 U.S.C. §§ 1821(d)(2) and 1831(c)(2), and

(l)  The defendants failed to provide to plaintiff Lopez and those workers who were furnished to the defendants by a farm labor contractor(s) an itemized statement including accurate information as to the number of hours worked when they were jointly employed by one or more of the defendants and farm labor contractor Maximo Becerra or the farm labor contracting duo of Eusebio and Isidoro Armenta to perform the type of work described in 7(a)-(c) above and the total pay period earnings for each such worker for the performance of that same type of work during each separate agricultural season that occurred in that same time period in violation of 29 U.S.C. §§ 1821(d)(2), and

(m)  The defendants violated, without justification, in the 2014 season the working arrangement they had with those plaintiffs and other workers that the defendants directly employed that one or more of the defendants would pay those workers at the same adverse effect wage rate that defendants Triple J and/or the enterprise of Triple J, Farms, and Hocutt

contracted to pay the H-2A workers that they employed during 2014 in violation of 29 U.S.C. §§ 1822(c) and 1832(c).

(n)  The defendants violated, without justification, the working arrangement they had with plaintiff Lopez and those workers the defendants jointly employed with the farm labor contracting duo of Eusebio and Isidoro Armenta in 2014 to pay those workers at the same adverse effect wage rate that defendants Triple J and/or the enterprise of Triple J, Farms, and Hocutt contracted to pay the H-2A workers that they employed during 2014 in violation of 29 U.S.C. §§ 1822(c) and 1832(c).

(o)  The defendants violated, without justification, the working arrangement to pay all wages at the overtime rate required by federal law and any applicable FICA taxes on the full amount of wages due for payment of time and one half each worker's regular hourly rate when those workers were directly employed by one or more of the defendants to work in excess of 40 hours in the same workweek when some or all of those same hours worked were not and/or will not be performed in connection with the farming operations of all defendants in violation of 29 U.S.C. §§ 1822(c) and 1832(c), and

(p) The defendants knowingly provided false or misleading information to all plaintiffs other than plaintiff Lopez and to other workers as to whether all

defendants were and/or are exempt from the obligation to pay wages at the overtime rate described in 29 U.S.C. § 207(a)(1) when those workers were directly employed by one or more of the defendants to work in excess of 40 hours in the same workweek when some or all of those same hours worked were not and/or will not be performed in connection with the farming operations of all defendants in violation of 29 U.S.C. §§ 1821(f) and 1831(e), and

(q) The defendants farm labor contractor Maximo Becerra and the farm labor contracting duo of Eusebio and Isidoro Armenta to house plaintiff Lopez and those workers who were furnished by Messrs. Becerra and Armenta in 2012, 2013, and/or 2014 when the defendants did not first take reasonable steps to determine that farm labor contractor Maximo Becerra and the farm labor contracting duo of Eusebio and Isidoro Armenta possessed a certificate of registration which was valid and which authorized those same farm labor contractors to house those workers in 2012, 2013, and/or 2014 in violation of 29 U.S.C. § 1842, and

(r) The defendants failed to pay plaintiff Lopez and other migrant agricultural workers who were furnished by Messrs. Becerra and/or Armenta weekly wages that were due when they were due for all hours worked when named plaintiff Lopez and those other workers were jointly employed by one or

more defendants and the farm labor contracting duo of Eusebio and Isidoro Armenta to perform the type of field work that is described in ¶¶7(a)-(c) above when the amount of wages was paid on a piece rate basis and the gross compensation paid did not equal or exceed the product of the hours worked and the specific hourly rate required by 29 U.S.C. § 206(a)(1) and/or 20 C.F.R. §§ 655.103(b) and 655.122(l)(2) and disclosed to those same workers by one or more defendants and/or farm labor contractor Maximo Becerra or the farm labor contracting duo of Eusebio and Isidoro Armenta in violation of 29 U.S.C. § 1822(a), and

(s) The defendants violated, without justification, the working arrangement they had with the plaintiff and other workers furnished to the defendants by Messrs. Becerra or the Armenta duo to pay all applicable FICA taxes on the full amount of wages due for payment of the wages that are described in ¶49(r) above in violation of 29 U.S.C. § 1822(c).

115. As a result of the intentional actions or omissions of all defendants that are described or referred to in ¶¶48-103, and 114(a)-(s), inclusive, above of this complaint, all named plaintiffs and each person who is a member of the class and subclasses defined in ¶¶49 and 49(a)-(s) above of this complaint have suffered damages, and are entitled to payment

of statutory damages pursuant to 29 U.S.C. § 1854(c)(1) for each agricultural season that occurred in the 3-year time period immediately preceding the date on which this action was filed and continuing, on information and belief, through the date that final judgment is entered in this action.

XV. <u>FIFTH CLAIM FOR RELIEF</u> (AWPA & FLSA wrongful discharge)

116. Paragraphs 5 through 22 and 48-103, inclusive, above are realleged and incorporated herein by reference by all named plaintiffs against all defendants under 29 U.S.C. §§ 1854(c)(1) and 1855(a) of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 et seq., 29 U.S.C. §§ 215(a)(3) and 216(b) of the Fair Labor Standards Act ("FLSA"), and the common law of wrongful discharge under the public policy of North Carolina.

117. As alleged in ¶¶88-103 above, the defendants have unlawfully and wrongfully discharged plaintiff Trejo because plaintiff Trejo filed and pursued in good faith the complaint he and his co-worker plaintiff Mateo filed on December 31, 2014 against the defendants on behalf of himself and his co-workers that the defendants violated the rights of the plaintiff Trejo and his co-workers under the AWPA, the FLSA, and the NCWHA, N.C.Gen.Stat. § 95-25.6.

118. The defendants' pretext for their retaliatory discharge of plaintiff Trejo was his alleged "theft" of a

relatively small quantity of sweet potatoes that the defendants had discarded as part of its regular and longstanding sweet potato processing procedure.

119. Pursuant to that regular and longstanding procedure, one or more of the Hocutt defendants authorized the defendants' employees to convert and retrieve sweet potatoes that the defendants had discarded by, at least in some cases, leaving those discarded sweet potatoes in a pile in the open air.

120. However, approximately one month or so after plaintiff Trejo had filed and pursued this lawsuit with plaintiff Mateo, one or more of the Hocutt defendants began to secretly videotape, film, and/or photograph the plaintiff Trejo as he was engaged in the process of picking up and removing several boxes of discarded sweet potatoes from the defendants' packing house.

121. At no point in the process of this secret videotaping, filming, and/or photography did any of the individual Hocutt defendants attempt to or actually confront plaintiff Trejo with any accusation that plaintiff Trejo was wrongfully and illegally removing those discarded sweet potatoes.

122. The defendants have refused to reinstate plaintiff Trejo pending an arbitrator's or this court's decision as to

whether plaintiff Trejo's discharge was wrongful and retaliatory.

123. The defendants' discharge of plaintiff Trejo was in violation of the North Carolina public policy codified in N.C.Gen.Stat. § 95-25.1(b) of the NCWHA.

124. As alleged in ¶¶100-103 above, the defendants have intentionally discriminated against all of the named plaintiffs other than plaintiff Trejo in the allocation of work in the defendants' packing house so that the nine (9) plaintiffs who have pursued this action have received significantly less work and significantly less wages for many if not all of the workweeks that have followed April 27, 2015.

125. The actions of the defendants that are complained of in this claim were taken in willful and deliberate disregard of the plaintiffs' rights under 29 U.S.C. §§ 1855(a), 215(a)(3), and the public policy codified in N.C.Gen.Stat. § 95-25.1(b) with respect to payment of payment of earned wages.

126. The actions of the defendants that are complained of in this claim were taken with willful intent to discourage and impede the plaintiffs' efforts to pursue the vindication of their rights under the NCWHA, the FLSA, and the AWPA.

127. The plaintiffs are all indigent migrant

agricultural workers who survive and support their families from paycheck to paycheck. The defendants' willful denial of overtime work and discharge of plaintiff Trejo was and is likely to cause serious harm to the plaintiffs and their ability to support their families.

128. The defendants did not have any rightful property interest in the sweet potatoes that they had discarded and for which they had a longstanding and regular practice of allowing their employees to claim.

129. The defendants were fully aware of the probable and substantial economic consequences of their willful conduct.

130. The defendants are fully able to pay punitive damages, as evidenced by their revenues or net worth.

131. As a result of the intentional, deliberate, and willful actions of all defendants that are described or referred to in ¶¶88-103 and 116-129, inclusive, above of this complaint, all named plaintiffs have suffered damages, and all named plaintiffs other than plaintiff Trejo are entitled to payment of statutory damages pursuant to 29 U.S.C. § 1854(c)(1) for the illegal retaliation they have suffered in violation of 29 U.S.C. § 1855(a), and payment of lost wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) for the overtime wages they lost.

132. As a result of the intentional, deliberate, and

willful actions of all defendants that are described or referred to in ¶¶88-103 and 116-129, inclusive, above of this complaint, named plaintiff Trejo has suffered damages, and he is entitled to payment of statutory damages pursuant to 29 U.S.C. § 1854(c)(1) for the illegal retaliation he has suffered in violation of 29 U.S.C. § 1855(a), payment of lost wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) for the wages that he has lost as a result of his wrongful discharge on or about February 23, 2015, compensation for the emotional distress and mental anguish that has suffered as a result of his wrongful discharge in an amount to be determined by a jury, and punitive damages in an amount to be determined by a jury.

XVI. <u>CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

133. Paragraphs 5 through 132 above are realleged and incorporated herein by reference by all named plaintiffs, the class and subclasses of persons defined in ¶¶30, 38, 39(a)-(c), 49, and 49(a)-(s), and the members of the collective actions defined in ¶¶25-26 above that all named plaintiffs seek to represent against all defendants.

134. The parties named in this action and members of the classes, subclasses, and collective actions that all named plaintiffs seek to represent are in dispute as to their respective rights, privileges, obligations, and liabilities

under the Fair Labor Standards Act, the Migrant and Seasonal Agricultural Worker Protection Act, and the North Carolina Wage and Hour Act, and require declaratory relief as to what those respective rights, privileges, obligations, and liabilities are.

135. Pursuant to 29 U.S.C. §§ 216(b) and 1854(c)(1), plaintiff Trejo seeks equitable relief by way of an injunction requiring the defendants to reinstate him to his former position of employment in the packing house of the defendants.

136. Pursuant to 29 U.S.C. §§ 216(b) and 1854(c)(1), all named plaintiffs seek equitable relief by way of an injunction requiring the defendants to terminate the discriminatory allocation of work that is described in ¶¶100-103 above in the defendants' continued employment of all named plaintiffs in the packing house of the defendants.

WHEREFORE all named plaintiffs respectfully request that the Court:

(a)  Grant a jury trial on all issues so triable;

(b)  Pursuant to Rule 23(b)(3), Fed.R.Civ.P., and to the extent that each named plaintiff performed any of the work that is the subject of each particular class or subclass claim, certify all named plaintiffs as representatives of the classes and subclasses alleged in ¶¶30, 38, 39(a)-(c), 49,

and 49(a)-(s) above with respect to the First, Second, and Fourth Claims for Relief based upon the factors alleged in ¶¶29-36, 37-47, and 48-55, inclusive, above of this Complaint;

(c) Pursuant to 29 U.S.C. § 216(b), certify all named plaintiffs as the representatives of the collective action alleged in ¶¶25-26 above with respect to the Third Claim for Relief;

(d) Enter judgment against defendants Triple J Farms, Inc., Hocutt Farms, Inc., Hocutt Brothers, Inc., the enterprise operated by Triple J, Farms, and Brothers, and each of the individual defendants, jointly and severally, and in favor of each of the named plaintiffs and each member of the classes and subclasses defined in ¶¶30, 38, and 39(a)-(c) above for unpaid back wages, liquidated damages where allowed by law, plus pre- and post-judgment interest at the full amount allowed by law under the First and Second Claims for Relief;

(e) Enter judgment against Triple J Farms, Inc., Hocutt Farms, Inc., Hocutt Brothers, Inc., the enterprise operated by Triple J, Farms, and Brothers, and each of the individual defendants, jointly and severally, and in favor of each named plaintiffs and each member of the collective actions defined in ¶¶25-26 above for unpaid back wages, liquidated damages

where allowed by law, plus pre- and post-judgment interest at the full amount allowed by law under the Third Claim for Relief;

(f) Enter judgment against Triple J Farms, Inc., Hocutt Farms, Inc., Hocutt Brothers, Inc., the enterprise operated by Triple J, Farms, and Brothers, and each of the individual defendants, jointly and severally, and in favor of each named plaintiffs other than named plaintiff Trejo for the lost back wages described in ¶¶100-103 above, plus an equal additional amount in liquidated damages pursuant to 29 U.S.C. § 216(b), plus $500 in statutory damages for each named plaintiff other than named plaintiff Trejo pursuant to 29 U.S.C. §§ 1854(c)(1) and 1855(a), plus pre- and post-judgment interest at the full amount allowed by law under the Fifth Claim for Relief;

(g) Enter judgment against Triple J Farms, Inc., Hocutt Farms, Inc., Hocutt Brothers, Inc., the enterprise operated by Triple J, Farms, and Brothers, and each of the individual defendants, jointly and severally, and in favor of named plaintiff Trejo for the lost back wages that he has suffered as a result of his wrongful discharge on or about February 23, 2015, plus an equal additional amount in liquidated damages pursuant to 29 U.S.C. § 216(b), plus monetary damages as compensation for the emotional distress and mental

anguish that has suffered as a result of his wrongful discharge in an amount to be determined by a jury, and punitive damages in an amount to be determined by a jury pursuant to 29 U.S.C. §§ 1854(c)(1) and 1855(a) and the common law of wrongful discharge in violation of public policy under the common law of the State of North Carolina, plus pre- and post-judgment interest at the full amount allowed by law under the Fifth Claim for Relief;

(h) Enter judgment against Triple J Farms, Inc., Hocutt Farms, Inc., Hocutt Brothers, Inc., the enterprise operated by Triple J, Farms, and Brothers, and each of the individual defendants, jointly and severally, and in favor of all members of the subclass described in ¶49(a) and all named plaintiffs other than plaintiff Trejo for the AWPA violation alleged in ¶114(a) for statutory damages in the full amount authorized by 29 U.S.C. § 1854(c)(1), plus pre- and post-judgment interest at the full amount allowed by law under the Fourth Claim for Relief;

(i) Enter judgment against Triple J Farms, Inc., Hocutt Farms, Inc., Hocutt Brothers, Inc., the enterprise operated by Triple J, Farms, and Brothers, and each of the individual defendants, jointly and severally, and in favor of each member of the statutory class and subclasses alleged in ¶¶49 and 49(a)-49(s) for $500,000, the maximum total amount in

statutory damages authorized by 29 U.S.C. § 1854(c)(1), plus pre- and post-judgment interest at the full amount allowed by law under the Fourth Claim for Relief;

(j)  Enter judgment against defendants Triple J Farms, Inc., Hocutt Farms, Inc., Hocutt Brothers, Inc., any enterprise operated by Triple J Farms, Inc., Hocutt Farms, Inc., and/or Hocutt Brothers, Inc., and each of the individual defendants, jointly and severally, and in favor of all named plaintiffs and each member of the classes subclasses defined in ¶49 and 49(a)-(s) above for costs pursuant to 29 U.S.C. §§ 1854(a) and 1920 and the plaintiffs' Fourth Claim for Relief;

(k)  Enter judgment against defendants Triple J Farms, Inc., Hocutt Brothers, Inc., Hocutt Farms, Inc., any enterprise operated by Triple J Farms, Inc., Hocutt Farms, Inc., and/or Hocutt Brothers, Inc., and each of the individual defendants, jointly and severally, and in favor of all named plaintiffs for costs and a reasonable attorney's fee pursuant to N.C.Gen.Stat. § 95-25.22(d) and 29 U.S.C. § 216(b);

(l)  Grant all named plaintiffs and the members of the collective action, classes, and subclasses that they seek to represent declaratory relief that defendants Triple J Farms, Inc., Hocutt Farms, Inc., Hocutt Brothers, Inc., any

enterprise operated by Triple J Farms, Inc., Hocutt Farms, Inc., and/or Hocutt Brothers, Inc., and each of the individual defendants, jointly and severally, have violated the rights of named plaintiffs Mateo and Trejo and those other employees under the FLSA and the AWPA;

(m)  Pursuant to 29 U.S.C. §§ 216(b) and 1854(c)(1), grant plaintiff Trejo an injunction requiring the defendants to reinstate him to his former position of employment in the defendants' packing house;

(n)  Pursuant to 29 U.S.C. §§ 216(b) and 1854(c)(1), grant all named plaintiffs equitable relief by way of an injunction requiring the defendants to terminate the discriminatory allocation of work that is described in ¶¶100-103 above in the defendants' continued employment of all named plaintiffs in the packing house of the defendants;

(o)  Award such other relief as may be just and proper in this action.

Respectfully submitted, this the 21st day of September 2015.

LAW OFFICE OF ROBERT J. WILLIS, P.A.

BY:/s/Robert J. Willis
    Robert J. Willis, Esq.
    Attorney at Law
    NC Bar #10730
    P.O. Box 1269
    Raleigh, NC  27602
    (919) 821-9031 telephone

(919)821-1764 facsimile
5. W. Hargett Street
Suite 404
Raleigh, NC  27601
Counsel for Plaintiffs
rwillis@rjwillis-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2015 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: R. Daniel Boyce, Esq., dboyce@nexsenpruet.com; L. Lamar Armstrong, Jr., Esq., Lamar@ArmstrongLawyers.com; L. Lamar Armstrong, III, Lamar3@ArmstrongLawyers.com.

Dated: October 7, 2015.       Respectfully submitted,

/s/ Robert J. Willis
Robert J. Willis
Counsel for Plaintiffs
P.O. Box 1269
Raleigh, NC 27602
Telephone: (919)821-9031
Fax: (919)821-1763
E-mail: rwillis@rjwillis-law.com