**American Arbitration Association**
Case No. 331 160 00334 12

| | |
|---|---|
| **Cynthia Joanne Heath**, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| **Murphy Oil USA, Inc.**, | ) |
| | ) |
| Respondent. | ) |

**American Arbitration Association**
Case No. 31 160 00333 12

| | |
|---|---|
| **Tamara S. Stovall**, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| **Murphy Oil USA, Inc.**, | ) |
| | ) |
| Respondent. | ) |

## AWARD OF ATTORNEYS' FEES AND COSTS

I, the undersigned arbitrator, having been designated in accordance with the parties' employment-related agreements dated December 22, 2009 (Heath), October 1, 2010 (Stovall) and March 29, 2011 (Heath), and having been duly sworn and having duly considered the proofs and allegations of the parties, make the following award to be incorporated into the parties' settlement.

Claimants have moved for an award of attorneys' fees and costs in connection with the settlement of their claims alleged against Respondent in *Stovall, et al. v. Murphy Oil USA, Inc.*, No. 5:12 CV 450-D (E.D.N.C.) (the "Action").

The Action was stayed by Judge Dever on August 23, 2012, pending arbitration of Claimants' individual claims under the Fair Labor Standards Act of 1938 ("FLSA") and its state analogues, the N.C. Wage and Hour Act ("NCWHA"), N.C. Gen. Stat., Article 2A, and

the N.C. Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. Article 21. Following commencement of this arbitration and a pre-hearing telephone conference, the parties advised me on March 28, 2013, that they had resolved their disputes, except for the amount of attorneys' fees and costs. As to that issue, they agreed that I should determine it based on submission of briefs. The parties have made their submissions (with appropriate factual attachments) in accordance with my Order of March 31, 2013. I have reviewed these submissions and conducted independent legal research necessary to make this award. Based solely on the evidence of record before me and on the requirements of the applicable statutes, as construed by the courts, I make the following **AWARD**:

**Respondent shall pay to Claimants' counsel a total of $38,404.37 as attorneys' fees and $365.40 as costs. The costs are payable to the Law Office of Robert J. Willis, P.A. The attorneys' fees are payable as follows: $8559.37 to the Law Office of Robert J. Willis, P.A. and $29,845.00 to Doggett Law Offices, P.A.**

\* \* \* \*

**Reasons for this Award**

Respondent's submission concedes that Claimants are entitled to an award of reasonable attorneys' fees as "successful" parties under the FLSA. [Response, p. 11] The parties thus agree that I am obliged to make some award of attorneys' fees and costs under the FLSA, which says in the imperative: "The court [arbitrator] in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. 216(b).

The parties also do not dispute the methodology for determining a "reasonable" fee, namely that I must first determine a "lodestar" amount based upon "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley v. Eckerhart,* 461 U.S. 424 (1983), and upon an assessment of the twelve so-called "*Johnson*" factors set forth in *Burnley v. Short*, 730 F. 2d 136, 141, n.2 (4th Cir. 1984). *But see, Perdue v. Kenny A., ex rel. Winn*, 559 U.S. ___ , 130 S. Ct. 1662 (2010) (regarding the "reasonable hours multiplied by reasonable rate" lodestar calculation as superior to the twelve-factor *Johnson* assessment.) After calculating the lodestar, according to the Fourth Circuit, I should then "subtract fees for hours spent on unsuccessful claims *unrelated to successful ones*." [Emphasis supplied] Finally, after subtracting the fees incurred for "unsuccessful unrelated" claims, I should then award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Johnson v. City of Aiken*, 278 F. 3d 333, 337, n. 7 and text (4th Cir. 2002). Application of this methodology is, of course, subject to an obligation not to frustrate the legislative intent to ensure that employees can effectively pursue their rights through capable counsel and that the purposes of the FLSA and its state analogues will be vindicated. Accordingly, the Supreme Court of the United States has repeatedly

reminded that it established a "strong presumption" that the lodestar represents a "reasonable" fee. *Perdue v. Kenny A., supra.*

Respondent helpfully concedes that the rates claimed by Claimants' counsel are "reasonable" in this jurisdiction. [Response, p. 12 at n. 1] That said, I would have (if requested) approved a slightly higher rate for Willis, who is justifiably regarded in North Carolina as preeminent in federal and state wage payment litigation. I might also have approved a rate somewhat greater than $250 per hour for Doggett, whose history in the business world prior to becoming a lawyer should distinguish him from the run-of-the-mill inexperienced lawyer. On the other hand, I found Doggett's time records wanting in comparison with the more precise and credible records submitted by Willis. (It appears, for instance, that Doggett failed to claim time that Willis' records show was spent with Doggett by telephone.) Because it would not be fair to the Respondent for me to compute (or adjust) the lodestar on unclaimed time, however, I decline to make any attempt to synchronize Doggett's time with that of his co-counsel.

Additionally, I have considered each one of the twelve factors traditionally employed by courts in computing a reasonable attorneys' fee in statutory fee-shifting cases. Except to the extent expressed below, none of these factors warrants a departure, either up or down, from the presumption that the "reasonable hours multiplied by reasonable rate" lodestar is an appropriate starting point for determining a reasonable fee under the Fourth Circuit rubric. Moreover, in making the ultimate determination of a reasonable fee, I have assumed that Claimants bear the burden of persuasion on disputed issues.

So, here is what the parties do dispute: Respondent first asks me to reduce the lodestar by excluding Robert Willis' pre-arbitration time (i.e., from February 7, 2012 to August 2, 2012) because it relates only to class and collective claims on which his work was not successful. Willis, however, claims that he specifically excluded time spent during that period on the class and collective claims. [Willis Aff., p. 9 at paragraph 14] While I find Willis' argument factually credible and legally persuasive generally, I cannot allow the full time Willis claims on his (and his paralegal's) work on one particular item - an evidentiary CD that bears inadequate explanation of its scope or content. Accordingly, I have excluded one-half of the total of 3.5 hours spent on that item in the five entries from March 12 through 19, 2012 on Willis' timesheet and one-half of the 2.05 hours spent on that item in the two entries on March 6, 2012 on his paralegal's timesheet. This total exclusion requires that $828.13 be subtracted from the claimed lodestar. The balance of Willis' time is clearly compensable, as his limited participation was necessary to the results achieved and not unnecessarily duplicative of Doggett's time, particularly in a case involving an esoteric application of the 40 hour week in an off-the-clock context.

Next, Respondent asks me to subtract from the lodestar's hours all time spent on the federal action because that action was not "successful." That argument, however, fails to take into account the exact language of the Fourth Circuit in the case Respondent cites. *Johnson v.*

*City of Aiken, supra*; *see also Hensley v. Eckerhart, supra*. 461 U.S. at 434-437. What the Court actually said was that time spent on unsuccessful *and unrelated* claims might be subtracted from the lodestar. In contrast to the cases cited by Respondent, the Action's complaint formed the basis for this arbitration; its text was incorporated into the demand for arbitration; its two featured plaintiffs are the Claimants in this arbitration (pressing the same claims they made in the Action); and the two pieces of litigation are inextricably bound together by their common factual core and shared legal basis. Thus, while it is literally true that Claimants were not successful in obtaining a federal judgment on their collective and class claims, that failure does not, in the particular circumstances of this litigation, warrant the wholesale exclusion of time Respondent seeks here.

Next, Respondent asks me to subtract from the lodestar's hours all time spent on the Action because it did not cause the Respondent to award relief to other employees or take a number of actions designed to ensure compliance with the FLSA and state law. To be sure, the evidence indicates that Respondent was not solely motivated in July of 2011 by a lawsuit filed a year later. Respondent, however, suggests that its litany of compliance actions was purely the product of a federal Department of Labor investigation that began in late July of 2011 and ended in the early fall of that year. The precise chronology of Respondent's compliance actions, however, casts an unhelpful shadow on its argument. The 2012 rolling hours time clock analysis, the March 6, 2012 updated training course, the early 2012 Human Resources publications and the January 16, 2012 email blast all occurred *well after* the federal investigation had terminated. The most plausible conclusion is that Claimants' federal action served at least as a catalyst or contributor to Respondent's attempts to address off-the-clock problems in its stores, even after it fired the manager of the targeted territory. Accordingly, I am persuaded that I should not diminish the lodestar simply because there was a federal investigation that resulted in one managerial discharge, some early compliance requirements and a few employees getting several hundred dollars apiece.

Next, Respondent asks me to discount the lodestar based on a percentage comparison between what Claimants originally demanded in the arbitration and what they settled for. I decline to do so because that comparison is not an accurate expression of the relatively high degree of success Claimants achieved. They actually recovered more than four times the average amount computed by the U.S. Department of Labor for three of Respondent's employees in similar circumstances. Indeed, the settlement Claimants' counsel achieved is more than eleven times the initial offer of settlement checks to the Claimants and a multiple of Respondent's settlement offer as late as January of this year. If anything, the degree of success Claimants' counsel was able to achieve for these low-wage workers might justify a modestly enhanced lodestar, were my discretion not constrained by the "strong presumption" language in *Perdue v. Kenny A., supra*. Accordingly, in the exercise of my arbitral discretion, I decline to reduce further the already adjusted lodestar in the circumstances of this case.

As to costs, Respondent asks me to exclude the filing and service fees for the aborted federal action. I will grant that request. Although I have concluded that the Action is *not* an

unsuccessful *and* unrelated component of this litigation, it does strike me as inequitable for Respondent to pay the filing and service fees for a *filing* that might have been avoided by first furnishing a draft copy of the complaint to Respondent's counsel as a pre-litigation demand. Accordingly, I have subtracted $356.60 (representing the filing fee and mailing costs) from Claimants' request for recovery of costs.

Finally, I have also made the following related adjustment to the lodestar: I have subtracted from the lodestar $325.00, representing 2.6 hours of Willis' paralegal's time unnecessarily spent on the *filing* (as distinct from the preparation) of the Action. Lastly, I decline, in the exercise of my arbitral discretion, to shift fees in any other respect having to do with this arbitration, and I thus deny Willis' informal request in Claimants' Reply for an additional $2800.00 for submitting that Reply in this arbitration.

To summarize, I am subtracting a total of $1153.13 from the lodestar suggested by Claimants and am excluding recovery of $356.60 of the costs attributable solely to the *filing* of the Action. In all other respects, I find the fees and costs requested by Willis and Doggett to be both reasonable in the circumstances of this case and necessary in order to vindicate the public policy underlying the statutes on which Claimants sued. All other requests to alter the amount of this award of attorneys' fees and costs are hereby denied.

s/ *Jonathan R. Harkavy*

Jonathan R. Harkavy, Arbitrator
Greensboro, North Carolina
June 13, 2013