IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:14-CV-302-FL

| | |
|---|---|
| MANUEL MATEO-EVANGELIO, JAIME TREJO-CARDONA, GILBERTO CERVANTES-VEGA, REYNALDO VILLALOBOS-MARTINEZ, EMILIO REYES, MARIA DE LOS ANGELES GONZALEZ-ROMAN, RAMIRO CERVANTES-VEGA, FRANCISCO CARMELO MATIAS-CASTRO, PABLO GONZALEZ-ROMAN, BENIGNO VILLA-GOMEZ, and SERGIO NARCISO LOPEZ-JUAREZ,<br><br>        Plaintiffs,<br><br>   v.<br><br>TRIPLE J PRODUCE, INC.; HOCUTT BROTHERS, INC.; HOCUTT FARMS, INC., JUDY HOCUTT; JOEY M. HOCUTT; JAMES MICHAEL HOCUTT; and M. JAY HOCUTT<br><br>        Defendants. | ORDER |

This matter is before the court on plaintiffs' motion for cy pres distribution (DE 89) and defendants' motion for reversion (DE 94).[1] The court heard argument on the motions July 11, 2017, and reached decision regarding certain issues in order entered July 12, 2017, while taking under advisement final decision on the motions. Upon filing of supplemental submissions by the parties as directed by the court, the motions are ripe for ruling. For the following reasons, defendants'

---

[1] Also pending is plaintiffs' motion for attorney fees and costs (DE 91), which motion will be addressed by separate order.

motion is denied and plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

The background of this case, as pertinent to the instant motions, may be summarized as follows. The first two named plaintiffs in this action filed suit on December 31, 2014, asserting violations of federal and state fair labor standards laws, based on alleged conduct by defendants in not paying properly wages for overtime work packaging sweet potatoes and other agricultural commodities. Plaintiffs amended their complaint several times, most recently on October 7, 2015, with a third amended complaint (the "complaint") brought by all of the above-named plaintiffs against the above-named settling defendants, asserting the following claims:

1. Two class action claims for failure to pay the promised wage under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 et seq. (3rd. Am. Compl. ¶¶ 104-109).

2. One collective action claim for minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. (except plaintiff Sergio Narciso Lopez-Juarez). (3rd Am. Compl. ¶¶ 110-112).

3. One class action claim failure to pay sufficient wages in violation of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"). 29 U.S.C. §§ 1801, et seq. (3rd Am. Compl. ¶¶ 113-115).

4. Individual claims for wrongful discharge by plaintiff Jaime Trejo-Cardona and for retaliation by nine of eleven named plaintiffs. (Id. ¶¶ 116-132).

The complaint seeks declaratory, injunctive, and compensatory relief, including unpaid back wages, liquidated damages, and statutory damages in the full amount authorized by the AWPA

($500 per plaintiff per violation, or up to $500,000 upon class certification).

On September 1, 2015, the parties executed a settlement agreement resolving all claims. (See DE 62-1, 75-1). The settlement agreement provides for settlement payments totaling $328,920.00 to the named plaintiffs and to class members based on the class action and collective action claims asserted in the complaint, divided as follows:

1. Payments to named plaintiffs ranging from $9,000 to $20,800 each, totaling $159,400. (DE 62-1 ¶1).

2. Payment of $20,480 to a class of "former packing house employees" who have "overtime claims," corresponding to the FLSA collective action claim (hereinafter the "FLSA fund") (Id. ¶ 2).

3. Payment of $20,400 to a class of "former packing house employees" who have "corresponding employment claims," corresponding to the NCWHA class action claim (hereinafter the "NCWHA fund") (Id. ¶ 2).

4. Payment of $128,400 into a settlement fund for the benefit of "a class of plaintiffs" including plaintiff Sergio Narciso Lopez-Juarez (the "Sergio Class"), corresponding to the AWPA class action claim (hereinafter the "AWPA fund"). "Upon proof of their work, each [class member] is eligible to a distribution of $350 per season, for a maximum of three seasons," or up to $1,050 per class member. (Id. ¶3).

On January 14, 2016, the court preliminarily approved settlement of all claims, granted class and collective action certification, and approved settlement notices. (See Orders, DE 66, 67, 69, 71). The court held a fairness hearing on June 6, 2016, at which no persons appeared with objections or comments concerning the settlement. (See DE 74).

3

The court granted final approval of the settlement and final class notice on September 15, 2016. (See Orders, DE 85, 86, with claim forms at DE 81). In support of final approval, plaintiff noted that as of September 2, 2016, notices had been mailed to 306 potential class members. (See claims summary, DE 80-6). Only four claims had been submitted at that time for the FLSA fund, three claims had been submitted for the NCWHA fund, and 21 claims had been submitted for the AWPA fund, of which 11 had been determined "Invalid" by the class action settlement administrator, Simpluris. (DE 80-6).

The parties filed the instant motions regarding cy pres and reversion on October 17, 2016. In order entered December 22, 2016, regarding these motions, the court ordered defendants to make supplemental filing regarding what further claims had been received and their position on Student Action With Farmworkers (SAF) as a cy pres recipient of unpaid settlement funds. Defendants filed response to the court's order on January 20, 2017, and plaintiff filed a motion for leave to file a reply on January 25, 2017.

Plaintiffs' counsel filed a final report of class counsel, as corrected, on June 8, 2017, which provides an update as to claims submitted and disputes regarding the same. (DE 110). After notice of hearing on pending motions, plaintiff filed a motion for measures to prevent undue repetition at hearing. (DE 113). Defendants filed a notice on July 10, 2017, with suggestion of address of issues at hearing.

As noted in the court's July 12, 2017, order memorializing rulings at hearing, the court reached decision regarding certain issues raised by the instant motions, which decisions are incorporated by reference here and reiterated in the discussion below. In addition, the court tasked the parties with developing consent order regarding terms and procedures for processing of

remaining outstanding claims.  In summary, the consent order entered August 1, 2017, requires: 1) class counsel to submit documentation to Simpluris, with copy to defendants, within 45 days of consent order; 2) farm defendants to notice intention to take depositions, within 30 days of receipt of documentation; 3) Simpluris to analyze received documents and deposition transcripts or response (if any), within 30 days of receipt of such documentation; and 4) the parties to file joint report within 30 days of receipt of report by Simpluris of claims, including invoice of fees of Simpluris and whether the unpaid remainder of NCWHA and FLSA funds is sufficient to satisfy such fees.  (DE 129).

### COURT'S DISCUSSION

The instant motions ask the court to determine the recipient for any unclaimed NCHWA, FLSA, and AWPA funds.

Regarding reversion, the settlement agreement provides:

> Except with respect to the Sergio class identified in paragraph 3 [of the settlement agreement], the parties agree that the Court will decide the recipient(s) of all unclaimed settlement funds (the reversion).  As to the Sergio class, the Parties stipulate that no defendant is eligible to be the recipient of any unclaimed settlement funds (the reversion) for the members of the Sergio class.

(DE 62-1 ¶ 5).

As a preliminary matter, the court notes that the parties disputed in the course of argument and briefing whether any remaining NCWHA and FLSA settlement funds should be reverted to defendants (as defendants argued) or whether the court should first reallocate remaining NCWHA and FLSA settlement funds to existing identified class members before determining reversion (as plaintiffs argued).  Those arguments may be rendered moot by provisions of the consent order designating such funds for payment of Simpluris's fees, depending on ultimate calculation of such

fees. (DE 129 at 7). In any event, provided there are any NCWHA and FLSA settlement funds remaining after payment of Simpluris's fees, the court rejects both defendants' and plaintiffs' arguments pertaining to NCWHA an FLSA settlement funds. The court rejects defendants' contention that NCWHA and FLSA settlement funds should revert to defendants, where a <u>cy pres</u> distribution is more consistent with the purposes of the statutes. The court also rejects plaintiffs' contention that the court should reallocate remaining funds to existing identified class members. The parties did not provide for such reallocation in their settlement agreement, but rather provided for the court to decide the recipient of reversion. (DE 62-1 ¶ 5). In both respects, this case is distinguishable from <u>Klier v. Elf tochem N. Am., Inc.</u>, 658 F.3d 468, 477 (5th Cir. 2011), cited by plaintiffs.

Accordingly, to the extent there are any remaining NCWHA and FLSA settlement funds upon filing of joint final report of the parties, the court DIRECTS that such funds be distributed in the aggregate with the remaining AWPA funds, upon final accounting of valid claims, to the <u>cy pres</u> recipient as set forth below. In this part, with respect to NCWHA and FLSA settlement funds, defendant's motion for reversion is DENIED.

The court previously set forth principles guiding the court's analysis of a <u>cy pres</u> distribution of unclaimed settlement funds, which the court restates here. The consensus view among circuit courts that have addressed the issue is that "the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." <u>In re Airline Ticket Comm'n Antitrust Litig.</u>, 307 F.3d 679, 682 (8th Cir. 2002); see, e.g., <u>Koby v. ARS Nat'l Servs., Inc.</u>, 846 F.3d 1071, 1080 (9th Cir. 2017) (requiring "that cy pres awards be tethered to the objectives of the underlying statutes or the

6

interests of the class members"); Hughes v. Kore of Indiana Enter., Inc., 731 F.3d 672, 676 (7th Cir. 2013) (stating "it should be possible in this case to find a charity concerned with consumer protection issues of the general character presented by the case"); In re Lupron Mktg. & Sales Practices Litig., 677 F.3d 21, 33 (1st Cir. 2012) ("[W]hen feasible, the recipients should be those whose interests reasonably approximate those being pursued by the class."); Klier v. Elf Atochem N. Am., Inc., 658 F.3d 468, 474 (5th Cir. 2011) (adopting Eighth Circuit language); In re Holocaust Victim Assets Litig., 424 F.3d 158, 161 (2d Cir. 2005) (same).

In this case, the legitimate objectives of the lawsuit were to obtain injunctive, declaratory, and monetary relief for farmworkers working at defendants' facilities in Eastern North Carolina, in or around Wilson County, allegedly subjected to violations of wage and hour laws set forth in the NCWHA, FLSA, and AWPA. (See e.g., 3rd Am. Compl. ¶¶ 104-132 & pp. 93-95). Concerning the AWPA in particular, plaintiffs alleged, for example, that "the gross compensation paid did not equal or exceed the product of the hours worked and the specific hourly rate disclosed to those same workers in violation of 29 U.S.C. §§ 1822(a) and 1832(a)," (id. ¶ 113(a)), and "defendants failed to ascertain and accurately disclose in writing . . . the wage rates to be paid . . . in the type of field work employment that is described in [the complaint] in violation of 29 U.S.C. § 1821(a)(2)," (id. ¶ 113(e)), among other alleged wage, recordkeeping, and disclosure violations. With respect to the interests of the AWPA class members, the settlement agreement provided for "a distribution of $350 per season, for a maximum of three seasons," or $1,050 per class member, drawing from the total AWPA settlement fund of $128,400. (Id. ¶3).

With respect to the objectives of the underlying statutes, their titles reflect a broad purpose to protect farmworkers, ensure uniform compliance with wage and hour requirements, and to

7

mandate fair labor standards. Concerning the AWPA in particular, the statute's stated purpose is "to remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers; to require farm labor contractors to register under this chapter; and to assure necessary protections for migrant and seasonal agricultural workers, agricultural associations, and agricultural employers." 29 U.S.C. § 1801. "AWPA is a remedial statute and should be construed broadly to effect its humanitarian purpose." Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1505 (11th Cir. 1993).

Considering the statutory provisions at issue in the AWPA class claims, the statute reflects more particularly an objective in those provisions to ensure farmworkers are employed and paid in accordance with statutory wage, recordkeeping, and disclosure requirements. See, e.g. 29 U.S.C. §§ 1821, 1822, 1831, 1832, 1842. In addition, the authorization of statutory damages of up to $500 per violation, and up to $500,000 per class, as an alternative to actual damages, reflects a statutory purpose to deter violations by employers, beyond merely compensating farmworkers for their losses. See 29 U.S.C. § 1854.

In sum, a cy pres recipient in this instance should be an organization whose interests and purposes align with farmworker interests in receiving correct wages and disclosures that are the subject of this lawsuit, and with the purposes of the AWPA in protecting those interests of farmworkers. Of all the organizations proposed by the parties and considered by this court, while none is a perfect match, the court finds SAF, proposed as an alternative recipient by plaintiffs, to have interests and purposes closer than the others to the lawsuit, farmworkers, and the AWPA.

According to the declaration of its executive director, Melinda Wiggins, SAF was incorporated in 1992 and is housed at the Center for Documentary Studies at Duke University. It

8

is a Section 501(c)(3) non-profit organization "whose mission is to bring students and farmworkers together to learn about each other's lives, share resources and skills, improve conditions for farmworkers, and build diverse coalitions working for social change." (DE 96-10 ¶7). "Annually, [SAF] conducts outreach to 5,000 farmworkers and conducts one presentation each week to congregations, university classes, and community groups," within North Carolina, including in Wilson county. (Id. ¶¶ 8-9). SAF would serve as a good steward to cy pres funds "to ensure that the funds are used exclusively to educate and assist both undocumented and documented farmworkers to exercise their rights under the FLSA, the AWPA, and the NCWHA." (Id. ¶ 13). SAF "has a long history of educating farmworkers about their protections under the AWPA, NCWHA, and FLSA." (Id. ¶ 14).

SAF's copyrighted website further supports the above statements in the Wiggins declaration. Notably, under the "vision-mission-goals" portion of the website, a summary of SAF goals includes the following "Farmworkers learn about their rights & resources" and "Farmworkers live and work under dignified conditions and are protected by labor laws." See http://www.saf-unite.org/content/vision-mission-goals [http://perma.cc/AR2S-XEYC] (emphasis added).

In holding that SAF is an appropriate cy pres recipient, the court is mindful of defendants' contention that SAF has been linked to certain unionization efforts. (See, e.g, DE 97 at 10-11; DE 105 at 8). Indeed, the court noted concern in its prior order that SAF, like Campaign for Migrant Worker Justice (CMWJ), "is too focused on unionization efforts." (DE 120 at 5). The court reiterates that unionization efforts are not consistent with the objectives of the instant lawsuit, the settlement agreement, or the statutes underlying the claims in this matter. See Greene v. Dayton, 806

9

F.3d 1146, 1149 (8th Cir. 2015) (recognizing that "Congress expressly exempted both agricultural and domestic service workers from the NLRA," and that courts have "determined that federal policy is indifferent to the regulation of agricultural workers, and therefore states remain free to legislate as they see fit"); see, e.g., N.C. Gen. Stat. §§ 95-78 to 95-84 (declaration of state policy as to labor organizations).

Nevertheless, upon careful further consideration of the record, including information regarding SAF and the other organizations proposed by the parties, the court finds that concerns regarding SAF's ties to unionization efforts are misplaced in the context of the instant cy pres distribution for several reasons.

First, unionization efforts are not among the stated goals or missions of SAF. (see DE 96-10; see also http://www.saf-unite.org/content/vision-mission-goals [http://perma.cc/AR2S-XEYC]). Second, SAF's executive director Wiggins has declared, under penalty of perjury, that if SAF receives cy pres funds SAF will "ensure that the funds are used exclusively to educate and assist . . . farmworkers to exercise their rights under the FLSA, the AWPA, and the NCWHA in the agricultural industry in eastern North Carolina," and "will use the funds to further the education and support of farmworkers." (DE 96-10 at ¶¶ 13, 18).

Third, SAF, in its considerable history, has worked with a large network of other organizations each with their own diverse and various missions and goals. (See DE 96-10 ¶ 15; see also http://www.saf-unite.org/content/our-partners [https://perma.cc/6PXC-4YL2] (listing "campus partners" including NC State University among 13 others, and "sponsoring organizations" of varied natures and backgrounds ranging from Episcopal Farmworker Ministry to Wake Forest School of Medicine). In light of the foregoing statements by Wiggins, it is unreasonable to exclude SAF from

10

consideration, where it is otherwise an excellent candidate to receive cy pres funds, because SAF has partnered in the past with other organizations focused on unionization efforts.

In addition, the court finds SAF is a better match than the other organizations proposed by defendants to the interests underlying this lawsuit and class members, and to the purposes of the AWPA, NCWHA, and FLSA. (DE 127 at 2-7). While other organizations proposed by defendants, including one previously suggested for consideration by the court, all have very laudable goals and provide vital services supporting the health, safety, general education, and well-being of farmworkers, they are not as focused on having farmworkers learn about their rights and protections under AWPA, NCWHA, and FLSA. See, e.g., https://episcopalfarmworkerministry.org/services/ [https://perma.cc/Z2EC-BFJY] ("Episcopal Farmworker Ministry responds to the physical, emotional, social, and spiritual needs of farmworkers . . . ."); http://juntosnc.com/about-juntos/ [https://perma.cc/8EGH-YJVH] ("[Juntos] works to unite community partners to provide Latino 8-12th grade students and their parents with knowledge, skills, and resources to prevent youth from dropping out and to encourage families to work together to gain access to college"); http://afop.org/health-safety/ [https://perma.cc/UMG9-AA2U] ("The AFOP membership seeks to mitigate the health and safety risks that farmworkers are exposed to each day[.]").

Finally, SAF strikes the right balance among the other organizations proposed by plaintiffs. The court previously has explained the difficulties with CMWJ, based upon ties to union activities and class counsel. (DE 120 at 5). With respect to NC Justice Center, Worker's Rights Project, the court rejects defendants' suggestion that NC Justice Center's own internal union operating policies disqualify it from consideration. Nevertheless, because "[o]ne of the cornerstones of the WRP's work is litigation on behalf of migrant and seasonal farmworkers," (DE 124-12 ¶ 9), the court is

concerned that a cy pres award to it would serve as a de facto legal fee advance for prosecution of future lawsuits. Setting a precedent of regularly returning cy pres funds to litigating entities would provide no incentive for counsel on behalf of farmworkers to negotiate class action settlements in a manner to maximize actual award of claims to class member farmworkers, rather than leaving a large residue of unclaimed funds as in this case.

In sum, pursuant to paragraph five of the settlement agreement in this case, the court DIRECTS that SAF shall be the recipient of "all unclaimed settlement funds (the reversion)," (DE 62-1 ¶ 5), payable within 30 days after the amount of said reversion finally is calculated and reported to the court by joint report of the parties due as set forth herein and the consent order entered August 1, 2017. Accordingly, plaintiffs' motion regarding designation of cy pres recipient is granted in this alternative part, and defendants' motion as to cy pres recipient is denied.

**CONCLUSION**

Based on the foregoing, plaintiffs' motion for cy pres distribution (DE 89) is GRANTED IN PART and defendants' motion for reversion (DE 94) is DENIED. Pursuant to paragraph five of the settlement agreement in this case, the court DIRECTS that Student Action With Farmworkers (SAF) shall be the recipient of all unclaimed settlement funds, calculated in the manner described and in the time frame set forth herein and in the court's August 1, 2017, consent order.

SO ORDERED, this the 24th day of August, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge