IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:14-CV-302-FL

| | | |
|---|---|---|
| MANUEL MATEO-EVANGELIO, JAIME TREJO-CARDONA, GILBERTO CERVANTES-VEGA, REYNALDO VILLALOBOS-MARTINEZ, EMILIO REYES, MARIA DE LOS ANGELES GONZALEZ-ROMAN, RAMIRO CERVANTES-VEGA, FRANCISCO CARMELO MATIAS-CASTRO, PABLO GONZALEZ-ROMAN, BENIGNO VILLA-GOMEZ, and SERGIO NARCISO LOPEZ-JUAREZ | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| TRIPLE J PRODUCE, INC.; HOCUTT BROTHERS, INC.; HOCUTT FARMS, INC., JUDY HOCUTT; JOEY M. HOCUTT; JAMES MICHAEL HOCUTT; and M. JAY HOCUTT | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on plaintiffs' renewed motion for award of attorney's fees and costs (DE 132), and the parties' joint final report (DE 131), pursuant to consent order entered August 1, 2017. For the following reasons, plaintiff's motion is granted to the extent set forth herein, and the court directs final distribution of settlement funds.

## BACKGROUND

The background of this case, as pertinent to the instant motion, may be summarized as follows. The first two named plaintiffs in this action filed suit on December 31, 2014, asserting

violations of federal and state fair labor standards laws, based on alleged conduct by defendants in not paying properly wages for overtime work packaging sweet potatoes and other agricultural commodities. Plaintiffs amended their complaint several times, most recently on October 7, 2015, with a third amended complaint (the "complaint") brought by all of the above-named plaintiffs against the above-named settling defendants, asserting the following claims:

1) Two class action claims for failure to pay the promised wage under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 et seq. (3rd. Am. Compl. ¶¶ 104-109).

2) One collective action claim for minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. (except plaintiff Sergio Narciso Lopez-Juarez). (3rd Am. Compl. ¶¶ 110-112).

3) One class action claim failure to pay sufficient wages in violation of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"). 29 U.S.C. §§ 1801, et seq. (3rd Am. Compl. ¶¶ 113-115).

4) Individual claims for wrongful discharge by plaintiff Jaime Trejo-Cardona and for retaliation by nine of eleven named plaintiffs. (Id. ¶¶ 116-132).

The complaint seeks declaratory, injunctive, and compensatory relief, including unpaid back wages, liquidated damages, and statutory damages in the full amount authorized by the AWPA ($500.00 per plaintiff per violation, or up to $500,000.00 upon class certification).

On September 1, 2015, the parties executed a settlement agreement resolving all claims. (See DE 62-1, 75-1). The settlement agreement provides for settlement payments totaling $328,920.00, by defendants to the named plaintiffs and to class members based on the class action and collective

action claims asserted in the complaint, divided as follows:

1) Payments to named plaintiffs ranging from $9,000.00 to $20,800.00 each, totaling $159,400.00. (DE 62-1 ¶1).

2) Payment of $20,480.00 to a class of "former packing house employees" who have "overtime claims," corresponding to the FLSA collective action claim (hereinafter the "FLSA fund") (Id. ¶ 2).

3) Payment of $20,400.00 to a class of "former packing house employees" who have "corresponding employment claims," corresponding to one of the NCWHA class action claims (hereinafter the "NCWHA fund") (Id. ¶ 2).

4) Payment of $128,640.00 into a settlement fund for the benefit of "a class of plaintiffs" including plaintiff Sergio Narciso Lopez-Juarez (the "Sergio Class"), corresponding to the AWPA class action claim (hereinafter the "AWPA fund"). "Upon proof of their work, each [class member] is eligible to a distribution of $350.00 per season, for a maximum of three seasons," or up to $1,050.00 per class member. (Id. ¶3).

On January 14, 2016, the court preliminarily approved settlement of all claims, granted class and collective action certification, and approved settlement notices. (See Orders, DE 66, 67, 69, 71). The court held a fairness hearing on June 6, 2016, at which no persons appeared with objections or comments concerning the settlement. (See DE 74).

The court granted final approval of the settlement and final class notice on September 15, 2016. (See Orders, DE 85, 86, with claim forms at DE 81). In support of final approval, plaintiff noted that as of September 2, 2016, notices had been mailed to 306 potential class members. (See

claims summary, DE 80-6). At that time, the total number of claims submitted were as follows:

1) NCWHA: 3 individuals.

2) AWPA: 21 individuals, of which 11 had been determined "Invalid" by the class action settlement administrator, Simpluris.

3) FLSA: 4 individuals.

(DE 80-6).

The parties then filed motions regarding cy pres and reversion of unpaid settlement funds on October 17, 2016. Pursuant to supplemental briefing ordered December 22, 2016, the parties submitted supplemental filings updating what further claims had been received, as well as the parties' positions on using Student Action With Farmworkers (SAF) as a cy pres recipient.

Plaintiffs' counsel filed a report of class counsel, as corrected, on June 8, 2017, which provided an update as to claims submitted and disputes then between the parties regarding the same. (DE 110). The court held hearing on the motions and disputes then pending, wherein the court reached decision regarding certain issues raised and tasked the parties with developing consent order regarding terms and procedures for processing of remaining outstanding claims. Consent order entered August 1, 2017, set a schedule for submission of documentation to claims administrator Simpluris, Inc., for its review and analysis and final determination of valid settlement claims, and directed the parties to file joint report within 30 days of receipt of report by Simpluris, Inc., of such claims, including invoice of fees of Simpluris and whether the unpaid remainder of NCWHA and FLSA funds is sufficient to satisfy such fees. (DE 129).

By text order entered September 29, 2017, the court denied without prejudice plaintiffs' then-pending motion for attorney's fees, where further developments with final claims accounting could

impact the court's consideration of attorney's fees, and the court directed plaintiffs to refile an updated and final motion for attorney's fees and costs at the time of filing of the joint final report pursuant to the consent order.

The parties filed their joint final report on November 27, 2017, and plaintiffs filed the instant renewed motion for attorney's fees and costs that same date. Included with the final report is a report by Simpluris, Inc., in accordance with the consent order, listing the final accounting of individual members of the NCWHA and AWPA classes, and the FLSA collective action as follows:

1) NCWHA: 3 individuals (out of a fund of $20,400.00).

2) AWPA: 19 individuals (out of a fund of $128,640.00).

3) FLSA: 5 individuals (out of a fund of $20,480.00).

(DE 131-1). Although not specified in either the joint final report or the report by Simpluris, Inc., the parties are in accord that the amount due to be paid to such class and collective action members totals $14,476.00, to be divided between 19 individuals, where all members of the NCWHA and FLSA classes are also members of the AWPA class. (See Def's Resp. (DE 134) at 4; Pl's Reply (DE 135) at 9; DE 131-1 at 2-5).

In sum, out of settlement award totaling $328,920.00, $159,400.00 was awarded and has been paid already to named plaintiffs. This leaves for determination funds to be paid out of remaining $169,520.00 in settlement funds designated for members of class and collective actions. As noted, based upon the report by Simpluris, Inc., the parties have agreed that $14,476.00 is due to be paid to designated class members, meaning that a total of $173,876.00 has been paid or is due to be paid to farmworkers as a result of this action. This will leave $155,044.00 of settlement funds remaining for distribution as cy pres award.

However, the parties have stipulated in their joint final report that the Simpluris, Inc., fees are allocated as follows:

1)      $19,009.83 of Simpluris, Inc., fees shall be paid by defendants.

2)      The remaining balance of $1,855.17 of Simpluris, Inc., fees shall be paid out of the unpaid remainder of the NCWHA and FLSA funds.

Based upon this information provided to the court, this reduces the remainder available for cy pres award, after distribution to designated class members and fees to Simpluris, Inc., to $153,188.83.

In sum, in the event Simpluris, Inc., distributes funds to all claimants as specified, a balance of $155,044.00 remains from the aggregate $169,520.00 of the class settlement funds, of which $1,855.17 shall be paid to Simpluris, Inc., and the remainder $153,188.83 shall be paid as cy pres award to SAF.

In support of the instant motion for attorney's fees and costs plaintiffs rely upon a declaration of class counsel (DE 133-1) and declarations of four local practitioners. (See Affidavit of M. Travis Payne (DE 92-11); Declaration of Eric L. Doggett (DE 92-10); Declaration of Gilda A. Hernandez (DE 92-9); Declaration of Carol Brooke (DE 133-2)). Following defendants' response in opposition, plaintiffs filed a reply, relying upon a supplemental declaration of class counsel (DE 135-1) and supplemental declaration of legal assistant Yoana Caceres (DE 135-2). As adjusted in their reply, plaintiffs seek a maximum of $257,597.25 in attorney's fees, as well as $4,774.13 in unopposed costs. (See DE 135-1 at 6 & 83).[1]

---

[1] Page numbers specified in citations to the record are page numbers of the document as designated electronically on the docket in the court's electronic case filing system, and not the page number indicated on the face of the underlying document.

# COURT'S DISCUSSION

A.    Attorney's Fees and Costs

The settlement agreement in this case provides for determination by the court of "the amount of Plaintiffs' counsel's attorney['s] fees and costs . . . to be paid by Defendants."  (¶ 5).

"In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243–44 (4th Cir. 2009).   In deciding what constitutes a "reasonable" number of hours and rate, "a district court's discretion should be guided by the following twelve factors":

1)    Time and labor expended;

2)    Novelty and difficulty of the questions raised;

3)    Skill required to properly perform the legal services rendered;

4)    Attorney's opportunity costs in pressing the instant litigation;

5)    Customary fee for like work;

6)    Attorney's expectations at the outset of the litigation;

7)    Time limitations imposed by the client or circumstances;

8)    Amount in controversy and the results obtained;

9)    Experience, reputation and ability of the attorney;

10)   Undesirability of the case within the legal community in which the suit arose;

11)   Nature and length of the professional relationship between attorney and client; and

12)   Attorneys' fees awards in similar cases.

Id. at 243-44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir.1978) (adopting

twelve factors set forth in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir.1974))).

"[A]ny award must be accompanied by detailed findings of fact with regard to the factors considered." <u>In re Abrams & Abrams, P.A.</u>, 605 F.3d 238, 244 (4th Cir. 2010) (quotations omitted). "Although . . . some factors may not have much, if anything, to add in a given case, . . . the factors that do apply should be considered." <u>Id.</u>

> With respect to determination of the hourly rate, the Fourth Circuit has noted:

> Determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry. Thus, the market rate should be determined by evidence of what attorneys earn from paying clients for similar services in similar circumstances, which, of course, may include evidence of what the plaintiff's attorney actually charged his client.

<u>Robinson</u>, 560 F.3d at 244 (emphasis in original; internal citations and quotations omitted). "Examples of the type of specific evidence that we have held is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." <u>Id.</u> at 245.

"After determining the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." <u>Robinson</u>, 560 F.3d at 244 (quotations omitted). "Finally, once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." <u>Id.</u> (quotations omitted). "The court will reduce the award if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." <u>McAfee v. Boczar</u>,

738 F.3d 81, 92 (4th Cir. 2013), as amended (Jan. 23, 2014). In the context of a class action settlement, the Fourth Circuit has noted that a district court can "adjust the lodestar figure using a 'multiplier' derived from a number of factors, such as the benefit achieved for the class and the complexity of the case." Berry v. Schulman, 807 F.3d 600, 617 n.9 (4th Cir. 2015) (emphasis added).

    1.    Reasonable Rate

The court begins its calculation of the lodestar figure by considering a reasonable rate. Plaintiffs assert that $400-425 is a reasonable rate for counsel. In a prior wage and hour class action, involving the same counsel, in which the parties had reached a settlement as to amount of attorney's fees, the court determined that $290 was a reasonable rate for this counsel, resulting in a sum deemed reasonably equivalent to $110,000.00 negotiated in settlement in that case. See Velazquez et al. v. Burch Equipment, L.L.C. et al., 7:14-CV-303-FL (E.D.N.C. Nov. 7, 2016) (hearing on approval of class action settlement).

In Velazquez, however, this court was not tasked with determining the amount of attorney's fees under dispute, but rather with approving the attorney's fee already negotiated in the settlement of the parties, without detailed evidence thereon. In this case, by contrast, the court must determine a reasonable rate based upon the evidence before the court, and plaintiffs have produced substantial evidence in support of the rate asserted, comprising affidavits of practitioners experienced in the area of wage and hour litigation and the local market for such legal work in this area of practice. (See Affidavit of M. Travis Payne (DE 92-11); Declaration of Eric L. Doggett (DE 92-10); Declaration of Gilda A. Hernandez (DE 92-9)). Defendants do not dispute this evidence, nor do they present any evidence of their own countering the evidence produced by plaintiffs, though they

note that counsel demanded only a rate of $400 per hour at settlement negotiations in August 2015. Accordingly, the court must make its hourly rate determination on the basis of the evidence presented. Robinson, 560 F.3d at 244.

Based on the submissions by plaintiffs and the record in this case, the court finds that a rate of $400 per hour for all hours expended is supported by the weight of the evidence. Plaintiffs' additional request for a rate of $425 based upon time spent after May 1, 2016, is not supported by the materials presented, in that an increase in attorney rate in 2016 is not reflected in the affidavits and declarations submitted. (See Affidavit of M. Travis Payne (DE 92-11 at ¶¶ 17-18); Declaration of Eric L. Doggett (DE 92-10 at ¶16); Declaration of Gilda A. Hernandez (DE 92-9 at ¶¶ 13,15)). Accordingly, the court finds $400 to be a reasonable hourly rate for plaintiffs' counsel.

2.      Number of Hours

In considering the number of hours for purposes of the lodestar calculation, the court finds it helpful to review first the history of plaintiffs' submissions of claimed hours and lodestar figures. As of October 17, 2016, plaintiffs asserted that counsel Willis performed 505.8 hours of legal work on this case as of October 17, 2016, from which plaintiffs subtracted 49.55 hours for unrelated or clerical work, leaving total attorney time of 456.25. (DE 92-1 at 181). Using a $425 hourly rate, this resulted in a claimed attorney time lodestar figure of $193,906.25. Plaintiffs added to this figure $1,167.50 for attorney clerical time (23.35 hours of clerical time at a rate of $50); $3,982.50 paralegal 1 time; and $4,574.00 paralegal 2 time, resulting in a total claimed attorney/paralegal lodestar figure of $203,630.00.

Plaintiffs updated their attorney time as of June 7, 2017, to add 68.3 additional hours of attorney time, bringing the total claimed time to 524.55. (DE 109-30 at 8). At a claimed rate in part

at $400 per hour for time prior to May 1, 2016, and $425 per hour for time after May 1, 2016, this resulted in total claimed attorney time lodestar figure of $232,657.50. In their instant renewed motion, as originally presented, plaintiffs claimed total attorney time of 688.65 hours. At a claimed rate in part at $425 per hour, and in part at $400 per hour, this resulted in a total claimed attorney time lodestar figure of $284,791.25.

In an updated declaration accompanying reply on December 18, 2017, plaintiffs noted total attorney time of 771.55 hours. (DE 135-1 at 82). At a rate of $400 per hour, this would result in total claimed attorney time lodestar figure of $308,620.00. However, plaintiffs voluntarily have reduced this attorney time claimed by a substantial amount in their reply to take into account several categories of time that were subject in part of argument by defendants. This includes the following:

1) 11.1 hours on unsuccessful NCWHA "off the clock" claim;

2) 8.55 hours drafting motion to strike;

3) 4.2 hours correcting FLSA collective action preliminary notice;

4) 15.85 hours clerical work prior to May 1, 2016;

5) 16.7 hours for time spent in litigation settlement before May 11, 2015;

6) 2.35 hours spent on motion to seal due to filing of unredacted exhibits;

7) 7.5 hours clerical work after May 1, 2016;

8) 22.8 hours in connection with renewed motion for attorney's fees (representing 50% of 44.55 hours spent in connection with renewed motion for attorney's fees);

9) 29.08 hours in connection with cy pres award for Student Action for Farmworkers ("SAF") (representing 50% of 58.15 hours spent in connection with motion for cy pres award in the alternative to SAF);

10)     29.6 hours in connection with cy pres award for Campaign for Migrant Worker Justice ("CMWJ") (representing 100% of 29.6 hours in connection with motion for cy pres award to CMWJ);

11)     Additional categories of time omitted altogether from declaration by plaintiffs' counsel;

12)     Paralegal time originally claimed.

(DE 135-1 at 82-83). The total attorney time subtracted, 147.73 hours, results in an adjusted an adjusted attorney time claim of 623.82. At $400 per hour, this results in a revised claimed attorney time lodestar figure of $249,528.00.

The court considers the revised claimed lodestar figure of $249,528.00 in light of the 12 lodestar factors. Here, the lodestar figure is supported by factors such as "time and labor expended" (factor 1), "the time limitations imposed by the client or circumstances" (factor 7), and "the nature and length of the professional relationship between attorney and client" (factor 11), in that the amount of time spent reasonably is guided by the circumstances of the litigation, including the nature of the claims advanced, the need for coordinating with clients and potential class members, the need for time spent in settlement negotiations with defendants, and the need for court briefing and argument.

The lodestar figure is also supported by factors such as "the attorney's opportunity costs in pressing the instant litigation" (factor 4); "the amount in controversy and results obtained" (factor 8), "the experience, reputation and ability of the attorney" (factor 9); and "the undesirability of the case within the legal community in which the suit arose" (factor 10), recognizing that, due to the nature of the claims, this case required a significant investment of time and effort by counsel without

guarantee of success and certainty of outcome, with relatively low amount in controversy and results obtained,[2] and delay in final result.

By contrast, a reduction in the lodestar figure is warranted due to some repetition of issues and similarities in form documents between the instant cases and prior cases on which plaintiffs' counsel has worked, as defendants argue. Implicated factors include, in part, "the novelty and difficulty of the questions raised" (factor 2); "the skill required to properly perform the legal services rendered" (factor 3); and "the attorney's expectations at the outset of the litigation" (factor 6). While defendants do not specify individual time entries that should be discounted due to these factors, a significant portion of entries pertaining to drafting documents related to the complaints and approval of class action settlement, to which these factors are applicable, are readily identifiable. The court has identified 78.45 hours of such drafting work, (see DE 135-1 at 17-18, 29, 32-33, 41, 46), which does not include entries related to revisions in response to comments of defendants, or entries on their face demonstrating address of issues unique to this case. For those limited identified entries totaling 78.45 hours, the court has applied a 50% reduction in time in light of these factors, resulting in a reduction from 78.45 to 39.23, and an adjusted total attorney time from 623.82 to 590.60, thus reducing the court's lodestar figure from $249,528.00 to $236.240.00.

In addition, the court has considered this case in comparison to other similar farmworker cases, implicating the factors of "the customary fee for like work" (factor 5) and "attorneys' fees awards in similar cases" (factor 12). As noted above, a negotiated attorney's fee of $110,000.00 was reached in settlement in Velazquez et al. v. Burch Equipment, L.L.C. et al., 7:14-CV-303-FL (E.D.N.C. Nov. 7, 2016). That case, however, has minimal value in comparison given the additional

---

[2] The court considers further below the degree of success and unsuccessful claims.

13

settled terms not present in the instant case. In <u>Aguilar-Gamas v. Scott Farms, Inc., et al.</u>, 5:13-CV-447-FL (E.D.N.C. Sept. 14, 2015), the total value of the settlement fund was $1,250,000.00, and the parties agreed to include in that settlement fund an attorney's fee award of $205,000.00, which represented approximately 19.6% of the settlement fund not devoted to payment of attorney's fees. Given the multitude of unique factors impacting the attorney fee awards in each case, the court does not find an adjustment to the lodestar figure warranted on the basis of comparison to these or other cases. However, the court discusses these cases further below in addressing the issue of degree of success.

Defendants suggest that certain additional categories of hours claimed should be deducted from the lodestar amounts, including time spent on cy pres arguments and unionization efforts, as well as time spent on the attorney's fee request. However, as noted above, plaintiffs have already voluntarily reduced as noted above, 50% of 44.55 hours of work in connection with renewed motion for attorney's fees, 100% of 29.6 hours in connection with motion for cy pres award to CMWJ, and 50% of 58.15 hours in connection with motion for cy pres award in the alternative to SAF. These voluntary reductions are substantial, and defendants do not demonstrate need in their response for further reductions in these categories in determining the lodestar figure in this case. The court finds that these voluntary reductions, in addition to other amounts voluntarily reduced by plaintiffs, constitute reasonable reductions for purposes of "unsuccessful claims" in this case, <u>Robinson</u>, 560 F.3d at 244, and the court reserves for discussion below further consideration of defendants' arguments in addressing the factor of degree of success.

Defendants also suggest that, instead of calculating any lodestar figure, the court should use a "percentage of fund" method to award approximately one-third of the settlement fund in this case,

or $108,000.00, as attorney's fees. The district court cases cited by defendants, however, which use a "percentage of fund" method in place of a lodestar analysis involve circumstances where the settlement agreement reached specifies a percentage of the settlement fund as attorney's fees, and the courts have undertaken analysis to determine the reasonableness of such percentage. See, e.g., Kay Co. v. Equitable Prod. Co., 749 F. Supp. 2d 455, 461 (S.D.W. Va. 2010) (settlement agreement provided attorney's fees in the amount of 25% of the settlement fund); Devine v. City of Hampton, Virginia, No. 4:14CV81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015) (settlement agreement provided attorney's fees in the amount of approximately 33%; with court expressly noting that "[a]ssessing the fairness of attorney's fees under an FLSA settlement negotiated at arm's length is not identical to determining their reasonableness using the familiar lodestar method").

Such cases do not involve circumstances, as here, where the court must calculate reasonable attorney's fees without benefit of a percentage specification in the settlement agreement. Accordingly, the court adheres to the lodestar method as set forth above. Nevertheless, the court takes into consideration defendant's arguments concerning percentage of fund in evaluating degree of success factors below.

In sum, based on the foregoing, a lodestar figure of $236.240.00, representing 590.60 hours at a rate of $400 per hour, is warranted in this case.

3.      Degree of Success

As noted above, now that the court has calculated the lodestar figure, it may "adjust the lodestar figure using a 'multiplier' derived from a number of factors, such as the benefit achieved for the class and the complexity of the case." Berry, 807 F.3d at 617 n.9. "[O]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it . . . awards some percentage of the

remaining amount, depending on the degree of success enjoyed by the plaintiff." Robinson, 560 F.3d at 244 (quotations omitted). "The court will reduce the award if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." McAfee, 738 F.3d at 92.

The factor of degree of success is significant under the circumstances of this case. The court begins its degree of success analysis by considering the original settlement demand in this case, which can be summarized as follows:

1)    $103,375.42 to named plaintiffs other than Lopez;

2)    $150,000 FLSA class damages;

3)    $500,000 AWPA statutory damages for class;

4)    $75,376.00 "corresponding employment" damages;

5)    $44,000 for wrongful discharge and retaliation claims;

6)    $92,790.22 attorney's fees and costs to date.

(See DE 92-1 at 40-44).[3] The total demanded for settlement by plaintiffs in the lawsuit thus was $965,541.64. As noted, the final settlement achieved was $328,920.00, without including any agreed-upon figure for attorney's fees. While not determinative alone to the degree of success analysis, the court notes that the amount of final settlement reached in agreement was only 34% of the amount originally demanded. The court takes this figure into account in noting that the relief obtained "is limited in comparison to the scope of the litigation as a whole." McAfee, 738 F.3d at 92; see also Mercer v. Duke Univ., 401 F.3d 199, 204 (4th Cir. 2005) ("When considering the extent

---

[3] Per plaintiffs' argument, the court has not included in this total demand a $500,000.00 demand for a NCWHA "off the clock" class action claim demand that was withdrawn shortly after it was made, before the parties began negotiations. See Pls' Mem. (DE 92) at 25. The court rejects for the instant purposes, however, plaintiffs' suggestion that the court should limit the settlement demand considered to $570,000.00, by combining damages sought under the NCWHA, FLSA, and AWPA, where the settlement demand, on its face, expressly does not provide for such combining. (See DE 92-1, at 40-44).

of the relief obtained, we must compare the amount of the damages sought to the amount awarded.").

The court next compares the lodestar figure to the overall settlement fund amount. Here, the lodestar figure of $236,240.00 is high in comparison to the overall settlement fund amount of $328,920.00: using this figure, attorney's fees would represent an award equivalent to over 71% of the settlement fund amount. Many examples of class action settlements cited by the parties, including some involving FLSA claims, involve awards of attorney's fees lower in proportion to the settlement fund amount. For example, in Aguilar Gamas et al. v. Scott Farms, Inc. No. 5:13-CV-447-FL, the parties negotiated a total settlement fund of $1,250,000.00, of which $205,000.00 was devoted to attorney's fees, which equated to approximately 19.6% of the $1,045,000.00 portion of the settlement fund not devoted to payment of attorney's fees.[4]

A number of additional class action settlements involved awards of attorney's fees equivalent to around 50% of the portion of the settlement fund not devoted to payment of attorney's fees. See, e.g., Hackett v. ADF Rest. Investments, 259 F. Supp. 3d 360, 367 (D. Md. 2016) (51% proportion, based upon $232,000.00 negotiated attorney's fees, compared to $452,700.00 portion of settlement award not devoted to attorney's fees); Hall v. Higher One Machines, Inc., No. 5:15-CV-670-H, 2016 WL 5416852 (E.D.N.C. Sept. 26, 2016 and April 3, 2017, Orders) (in FLSA class action, 49% proportion, based upon $321,545.95 negotiated attorney's fee, compared to $643,091.90 portion of settlement award not devoted to attorney's fees); Beasley v. Custom Communications, No. 5:15-CV-583-FL (E.D.N.C. Oct. 24, 2017) (in FLSA class action, 50% proportion, based upon $406,666.00

---

[4] In the cases involving class action settlements noted in the text above, attorney's fees are included within the settlement fund, whereas here the attorney's fees are to be determined in addition to the settlement fund. To ensure accurate comparison, where pertinent information is available, the court specifies attorney's fees as a percentage of any settlement funds not devoted to payment of attorney's fees.

negotiated attorney's fee, compared to $813,334.00 portion of settlement award not devoted to attorney's fees); Devine v. City of Hampton, No. 4:14-CV-81, 2015 WL 10793424 (Dec. 1, 2015) (in FLSA class action, 51% proportion, based upon $1,189,167.00 negotiated attorney's fee, compared to $2,310,833.00 portion of settlement award not devoted to attorney's fees); Leigh v. Bottling Group, LLC, No. DKC10-0218, 2012 WL 460468 (D.Md. Feb. 10, 2012) (in FLSA class action, 30% proportion, based upon $64,273.14 attorney's fee, compared to $211,278 portion of settlement award not devoted to attorney's fees; parties' negotiated attorney's fee of $200,000, rejected by court).

One outlier is Velasquez v. Burch Equipment, LLC, 7:14-CV-303-FL (E.D.N.C., Oct. 27, 2016), where, in a FLSA class action settlement approved by this court, the parties negotiated a $110,000.00 attorney's fee, compared to $90,000.00 portion of settlement award not devoted to attorney's fees, a 122% proportion. However, in that case, the parties included in the settlement substantial non-monetary consideration in the form of a three year labor agreement with the Farm Labor Organizing Committee AFL-CIO. (See Settlement Agreement (7:14-CV-303-FL, DE 54-2, at 8-9). Accordingly, the court does not consider Velasquez to be an apt comparison.

In sum, an award of attorney's fees at 71% of settlement fund is high in comparison to other cases involving settlement of similar class action claims, with the median tending towards 50%. In addition, it is notable that none of the cases cited above for comparison purposes involved a FLSA class action settlement where attorney's fees were not negotiated as a part of the settlement agreement. The fact that plaintiffs' in this case were not successful in negotiating attorney's fees as part of the settlement fund is an additional factor the court has taken into consideration in considering the overall degree of success in this action.

Finally, while not in itself determinative of degree of success, the court considers the amount of funds actually paid to farmworkers, in comparison to the attorney's fees sought. As noted, of the $328,920.00 in funds set aside for the class, only $14,476.00 is due to be paid to 19 designated class members, and $159,400.00 was awarded and has been paid to named plaintiffs. The amount paid to designated class members is very low, considering the amount of time and effort that went into identifying and litigating class membership issues.

In so noting low payment amounts to class members, the court recognizes plaintiffs' arguments that they should not be penalized in this analysis for tenacious litigation positions taken by defendants. At the same time, however, plaintiffs bear equal responsibility for reaching a settlement agreement that left critical terms still open to dispute and protracted litigation. The court also recognizes that where unclaimed funds will be distributed to cy pres beneficiary plaintiffs proposed in the alternative, the amount of funds actually paid to designated class members is not in itself determinative of degree of success. (Pls' Reply (DE 133) at 26 (quoting Gascho v. Global Fitness, LLC, 822 F.3d 269, 283 (6th Cir. 2016)). Nevertheless, the court takes into account low payment amounts as one factor among the several noted here in evaluating the totality of circumstances in this case.

At bottom, when evaluating "the benefit achieved for the class," Berry, 807 F.3d at 617 n.9, "the degree of success enjoyed by the plaintiff," Robinson, 560 F.3d at 244, and "the relief . . .in comparison to the scope of the litigation as a whole," McAfee, 738 F.3d at 92, in light of all the circumstances of this case, the court is compelled to reduce the lodestar figure of $236,240.00 by a percentage factor of 25%, which results in an award of attorney's fees equivalent to approximately 54% of the $328,920.00 settlement fund, at $177,180.00. This percentage factor takes into account

the relatively low total size of the settlement fund in proportion to the case as a whole; the relatively high amount of attorney's fees in proportion to the size of the settlement fund; the absence of a negotiated attorney's fees amount in the settlement agreement; the relatively limited degree of success in securing payments to individual class members; plaintiffs' success, in part, in securing plaintiffs' alternative choice as cy pres recipient; in addition to all other facts and circumstances of this case as noted herein.

In sum, the court awards plaintiffs $177,180.00 in attorney's fees. In addition, where the costs sought are reasonable and defendants do not provide any basis for reduction thereof, the court awards $4,774.13 in costs.

B.      Final Distribution Order

The parties have proposed jointly a final distribution order, which the court finds reasonable and adopts with modifications for the purposes herein.

Within 30 days of entry of this order, Simpluris, Inc. is DIRECTED to distribute the AWPA class compensation funds, NCWHA class compensation funds, and FLSA collective action compensation funds, created by the parties' settlement agreement (DE79-1), to the persons listed in the respective AWPA and NCWHA class lists in exhibit A to the parties' joint final report (DE 131-1) and to the persons listed in the FLSA collective action list in exhibit A to the parties' joint final report (DE 131-1), in the respective amounts listed for each such person in each such list.

Within 30 days after distribution ordered in the preceding paragraph, after subtracting $1,855.17, from the unpaid remainder of NCWHA and FLSA funds (50% each) for a portion of its fees not payable by defendants (see DE 131-2; DE 131 at 2), Simpluris, Inc. is directed to distribute all unclaimed funds that remain after the distribution described above have been completed by

Simpluris, Inc. from the AWPA class compensation funds, the NCWHA class compensation funds, and the FLSA collective action compensation funds, created by the settlement agreement (DE79-1) and approved by the court, to Student Action for Farmworkers ("SAF") (see DE96-10), c/o Melinda Wiggins, Executive Director, 1317 W Pettigrew Street, Durham, NC 27705, Phone (919) 660-3652, Fax (919) 681-7600, Email at admin@saf-unite.org.

The court DIRECTS counsel for defendants to notify Simpluris, Inc. of these directives and to provide a copy of this order to Simpluris, Inc. Within 65 days of the date of this order, defendants are DIRECTED to file a notice confirming completion of the foregoing distributions by Simpluris, Inc.; or, if not confirmed, plaintiffs or defendants may file a motion, as appropriate, for further consideration by the court. If defendants' notice is filed, without other motion, the clerk shall close the case without further order of this court.

## CONCLUSION

Based on the foregoing, plaintiffs' renewed motion for award of attorney's fees and costs (DE 132), is GRANTED to the extent set forth herein, and the court awards plaintiffs $177,180.00 in attorney's fees and $4,774.13 in costs. In addition, in accordance with parties' joint final report (DE 131), the court includes herein a final distribution order setting forth directions for distributions to be made by Simpluris, Inc. Within **65 days** of the date of this order, defendants are DIRECTED to file a notice confirming completion of the foregoing distributions by Simpluris, Inc.; or, if not confirmed, plaintiffs or defendants may file a motion, as appropriate, for further consideration by the court. If defendants' notice is filed, without other motion, the clerk shall close the case without further order of this court.

SO ORDERED, this the 6th day of April, 2018.

LOUISE W. FLANAGAN
United States District Judge

21